MORGAN (HAMPDEN BANK v.). See Case No. 6,008.

MORGAN (HUBBARD v.). See Case No. 6,-817.

## Case No. 9,802.

### MORGAN v. ILLINOIS & ST. L. BRIDGE CO.

[5 Dill. 96; [1] 7 Cent. Law J. 311; 6 Rep. 707.]

Circuit Court, E. D. Missouri. 1878.

NEGLIGENCE — DANGEROUS EXCAVATION — INJURY TO CHILD—BURDEN OF PROOF—DAMAGES.

1. The railway tunnel connecting the union depot in St. Louis with the Illinois and St. Louis

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

bridge was, at a point where it was uncovered, and within the line of a public street, left unguarded, exposing a perpendicular wall fourteen feet in depth below the surface of the street. The petitioner, a boy four years of age, strayed away from his home, about two blocks distant, under circumstances not disclosed by the testimony, fell into this excavation, and sustained a fracture of the thigh bone. It appeared (1) that his parents were poor and unable to employ a servant to look after him; (2) that he sustained no other injury except physical pain and suffering; (3) that the tunnel was in custody of receivers of this court: *Held*, (1) that the unguarded excavation was a nuisance, the continuing of which rendered the receivers liable to pay out of the fund in their charge damages for any injury of which it was the proximate cause; (2) that the petitioner was in law incapable of negligence, and that the burden of showing contributory negligence on the part of the parents, such as, imputed to the petitioner, would bar a recovery, rested with the respondents.

2. The mere fact that a child four years of age strayed a distance of more than two blocks from home, at play with other children, is not of itself evidence of contributory negligence on the part of its parents.

[Cited in Mayhew v. Burns, 103 Ind. 341, 2 N. E. 801.]

3. Damages may be given in such a case where there is no other substantial element than physical suffering.

This action was brought in the form of an intervening petition in a suit in equity which had been brought to foreclose a mortgage. This peculiar form of suit was necessitated by the fact that the property, the negligent construction of which produced the injury complained of, was in the hands of receivers appointed by this court. By consent of counsel, the petition was referred to Seymour D. Thompson, Esq., one of the masters in chancery of the court, who reported as follows:

"From the testimony I find the following facts: That on the 1st day of · November, A. D. 1876, the receivers of this court, John P. Morgan and Solon Humphreys, were operating the structure known as the St. Louis tunnel, connecting the Illinois and St. Louis bridge with the union depot, in the city of St. Louis. That the said tunnel, as originally constructed, debouches from beneath the ground in the middle of Eighth street, in St. Louis, at the crossing of Clark avenue, and runs southwardly in the centre of Eighth street to Spruce street, which crosses it by means of a bridge; from which point said tunnel continues south a short distance, and then gradually deflects to the west, so that the western side of it crosses the western line of Eighth street at a point one hundred and forty-seven feet south of the Spruce street bridge. The uncovered portion of said tunnel thus runs within the limits of Eighth street for a distance of two blocks. The wall of said tunnel is surrounded by a flat coping of stone, about on a level with Eighth street, along which is built an iron railing, designed to protect men and animals traveling along the street from falling into it. At a point about three feet north from where the western wall of the tunnel intersects the line of Eighth street in deflecting to the west, as already stated, this railing, at the time of the accident in controversy, stopped. At the point thus left unguarded within the line of Eighth street, the distance to the bottom of the tunnel was about fourteen feet. Beyond the point where the western wall of the tunnel crosses the western line of Eighth street, the coping descends in the form of a stairway, at an angle of forty-five degrees. A rough sketch returned into court, marked 'Exhibit A to Testimony,' gives a fair idea of the geography of the tunnel, as thus. described. The road which runs along the western side of the open tunnel in Eighth street is by this curve in the tunnel deflected to the west over private ground, and is a constantly traveled thoroughfare.

"On the date already mentioned, November 1st, 1876, the intervening petitioner, John Hagan, was between three and four years of age. He lived with his parents upon Clark avenue, near Ninth street—a little more than two blocks distant from the point where the western wall of the tunnel crosses the western line of Eighth street, as already indicated. His parents were poor. His mother was obliged to do her own house-work, and they were unable to employ a nurse or servant to take care of him. He strayed from home, and, while at play with other children upon the unguarded coping of the tunnel, at the point already indicated, just within the line of Eighth street, fell into the tunnel and received a simple fracture of the thigh bone. This fracture is well healed; the leg is not shortened, or the limb deformed, except by a slight callus, which will gradually be absorbed. I find from the evidence that the petitioner received no other injuries from this fall than physical pain and suffering.

"Upon this state of facts three questions would seem to arise:

"1. Were the receivers guilty of negligence in permitting a portion of the wall of the tunnel to remain unguarded at a point within the line of a public street constantly traveled, where the wall was perpendicular, where the excavation was fourteen feet deep, and through which trains were constantly passing? On this point I entertain no doubt. It seems to me clear that the tunnel company, leaving a portion of so dangerous an excavation unguarded at such a point, were the authors of a public nuisance, and that the receivers were continuers of it.

"2. Was there contributory negligence imputable to the plaintiff, such as should bar a recovery of damages? Children at the tender age of the plaintiff at the time of the injury complained of are in law incapable of negligence (O'Flaherty v. Union Ry. Co., 45 Mo. 70; Hartfield v. Roper, 21 Wend. 615; Mangam v. Brooklyn R. Co., 38 N. Y. 455; North Pennsylvania R. Co. v. Mahoney, 57 Pa. St. 187); but the weight of authority is that the negligence of the parent, guardian, or other person lawfully in custody of a child which is injured, will be imputed to the

child, so as to bar a recovery of damages (Hartfield v. Roper, 21 Wend. 615; Waite v. Northeastern Ry. Co., 28 Law J. (Q. B.) 258; Ohio & M. R. Co. v. Stratton, 78 Ill. 88; Pittsburg, etc., Ry. Co. v. Vining, 27 Ind. 513; Lafayette, etc., R. Co. v. Huffman, 28 Ind. 287; Karr v. Park, 40 Cal. 188; Fallon v. Central Park, etc., Ry. Co., 64 N. Y. 13; Mangam v. Brooklyn R. Co., 38 N. Y. 455; Callahan v. Bean, 9 Allen, 401; Wright v. Malden & M. R. Co., 4 Allen, 283; Munn v. Reed, Id. 431; Louisville & P. Canal Co. v. Murphy, 9 Bush. 522; Downs v. New York Cent. R. Co., 47 N. Y. 83; Drew v. Sixth Ave. R. Co., 26 N. Y. 49). Yet some courts deny this, and upon grounds which seem entitled to much consideration. Daley v. Norwich & W. R. Co., 26 Conn. 591; Government St. Ry. Co. v. Hanlon, 53 Ala. 70; Norfolk & P. R. Co. v. Ormsby, 27 Grat. 455; Philadelphia & R. R. Co. v. Long, 75 Pa. St. 257. Whatever may be the correct rule on this subject, it is clear upon authority that parents situated as the parents of the plaintiff were—poor, the father absent at his daily labor, the mother obliged to do her own house-work, unable to employ a nurse or servant to attend the child when upon the street—will not be deemed guilty of such negligence as will prevent a recovery of damages if the child is injured through the negligence of the defendant while straying upon the street unattended.

"3. In such a case, will damages be given on account of physical suffering where there has been no direct pecuniary loss? Upon this point I have some difficulty; but the tendency of the courts seems to be to sustain verdicts where the plaintiffs received no substantial injury except physical pain and mental suffering, unless the verdicts are so excessive as to create a presumption that the jury acted from passion or from prejudice—Sedg. Dam. (6th Ed.) 699, note 2; Trimble v. Spiller, 7 T. B. Mon. 394; Huckle v. Money, 2 Wils. 205; Beardmore v. Carrington, 1d. 244; and whether such damages are called 'exemplary damages,' or 'smart money,' or 'compensation for injured feelings,' seems to be more nearly a debate about terms and definitions than about any substantial differences which are capable of being traced and maintained in the administration of justice (Hendrickson v. Kingsbury, 21 Iowa, 378; Detroit Daily Post Co. v. McArthur, 16 Mich. 447; Fay v. Parker, 53 N. H. 342, 381; McKinley v. Chicago & N. W. R. Co., 44 Iowa, 321). All the American courts seem agreed that physical suffering may be considered by the jury in estimating damages, even where the negligence was not gross or the injury so wilful as to warrant the giving of what are termed exemplary damages. Sedg. Dam. (6th Ed.) 699, note 2; Indianapolis & St. L. R. Co. v. Stables, 62 Ill. 313; City of Chicago v. Langless, 66 Ill. 361."

The report concluded by recommending a decree that the receivers pay the petitioner out of the funds in their hands $500 and costs. Exceptions were filed to the foregoing report by the receivers, and on those exceptions the cause was submitted to the court.

Glover & Shepley, for receivers.
A. R. Taylor, for petitioner.

DILLON, Circuit Judge. The only exception to the master's report relied on by the counsel for the receivers, is that the master erred in not finding that the parents of John Hagan were negligent, and that such negligence defeats the right of the infant to recover the amount of the damages sustained by the negligence of the receivers. In the excellent report of the master, the principal cases upon the effect of the negligence of parents in defeating the right of action for a negligent injury to their child are collected. They cannot be entirely reconciled, although, when the facts of the particular cases are considered, the discrepancy is not as great as at first it would appear to be.

Upon the facts in this case, we entertain no doubt that the petitioner is entitled to compensation for the injury he sustained. The deep, unguarded excavation in the street was not only a public nuisance, but a dangerous one. The receivers ought not to have permitted it to continue. The natural instincts and habits of children lead them to play; and it is scarcely possible, and certainly not practicable, to keep them entirely off the streets, or under constant supervision. The injury here was not caused by any person or agency in the lawful use of the street. What right has the tunnel company to leave a dangerous pitfall in the public way, and then to insist that all the children in the neighborhood shall be imprisoned or kept off the street? If the petitioner's parents had lived immediately upon or very near this excavation, and, knowing the danger of permitting their child to go at large, had actually permitted it to go to the place of danger, or suffered this to be done through actual negligence. the case might present more difficult questions than now arise. The master does not find that the child was knowingly, or even negligently, permitted to go to, or remain in, the vicinity of the excavation. His parents lived over two blocks distant, and the finding is that he "strayed away from home," and was injured while at play with other children. It is not shown that the child was in the habit of going there; and as the receivers' negligence is positive and actual, and was the direct cause of the injury, and as the onus to establish the defence of contributory negligence is on the receivers (Railroad Co. v. Gladman, 15 Wall. [82 U. S.] 401), and they have failed to show such negligence, they are liable. It is not necessary, in this view, to go into the learning upon the subject of imputable negligence of parents to children, for in this case it is not shown that the parents were at fault in the child being at the place of the accident at the time when

the accident happened. Some of the cases seem to make the liability depend upon the means of the parents, and to countenance a distinction as to contributory negligence between parents able to employ nurses or attendants and those who are not. This distinction may be doubted, for there is not, in this country, one rule of law for the rich, and a different rule for the poor. It extends its protecting shield over all alike. The common law is justly distinguished for its solicitude for the public safety, and any person or corporation that illegally imperils the lives, limbs, or health of the people is liable. The tunnel company has no more right, by having a dangerous excavation in the public ways, unnecessarily to impose upon the rich the duty to employ an attendant for their children than to impose upon the poor the impracticable duty of never allowing their children to escape from sight, lest they may be injured by its wrongful and illegal act. 5 South. Law Rev. 684. The exceptions are overruled, and an order will be entered in conformity with the report of the master. Ordered accordingly.

NOTE. " 'People in the situation of life of those who had custody of the child,' said Wagner, J., in a recent case, 'cannot always attend to it strictly; and if it escapes from them unawares, it must not be injured simply because it so escapes.' Isabel v. Hannibal, etc., Ry. Co., 60 Mo. 483. In another case the same learned and humane judge, discussing this question, said: 'To say that it is negligence to permit a child to go out to play unless it is accompanied by a grown attendant, would be to hold that free air and exercise should only be enjoyed by the wealthy, who are able to employ such attendants, and would amount to a denial of these blessings to the poor.' O'Flaherty v. Union Ry. Co., 45 Mo. 74. In a case very similar to this, another very learned and capable judge used the following language: 'The doctrine which imputes the negligence of the parents to the child in such a case as this is repulsive to our natural instincts, and repugnant to the condition of that class of persons who have to maintain life by daily toil. It is not the case where the positive act of a parent or guardian has placed a child in a position of danger, necessarily requiring the care of the adult to be constantly exercised, as where a parent takes a child into the cars, and, by his neglect, suffers it to be injured by straying off upon the platform. But here a mother, toiling for her daily bread, and having done the best she could, in the midst of her necessary employment, loses sight of the child for an instant, and it strays upon the track. With no means to provide a servant for the child, why should the necessities of her position in life attach to the child, and cover it with blame? When injured by positive negligence, why should it be without redress? A negligent wrong is done; it is incapable of contributing to it: then why should the wrong not be compensated?'. Agnew, J., in Kay v. Pennsylvania R. Co., 65 Pa. St. 276. The same views are reasserted in Philadelphia & R. R. Co. v. Long, 75 Pa. St. 257. "In Littlefield v. Atlantic & Pac. Ry. Co., (intervention of McAuley), the learned district judge, sitting in this court, awarded an old man $500 as damages on account of having been wrongfully expelled from a passenger train of the receivers by its conductor, and compelled to walk three miles, crossing a high and dangerous bridge, to get to his home. This was a case for exemplary damages. On the other hand, in West v. Forrest, 22 Mo. 344, the defendant, in beating a female slave, accidentally inflicted some blows upon her mistress, the plaintiff. There does not appear to have been any attempt to prove that the plaintiff had suffered any direct pecuniary loss. The court sustained a verdict for $400, saying: 'The plaintiff's case was fully made out before the jury, and by their verdict of $400 they exhibited their sense of such a wrong, and properly vindicated the injuries and wounded feelings of the plaintiff.' In Cracker v. Chicago & N. W. Ry. Co., 36 Wis. 657, a railway conductor kissed a female passenger. Here was certainly no direct pecuniary loss: but the company was compelled to pay $1,000 for it. The damages were expressly placed upon the ground of compensation. In McKinley v. Chicago & N. W. Ry. Co., 44 Iowa, 314, the plaintiff was forcibly and successfully resisted by a brakeman in attempting to enter a passenger car of the defendant. There is no statement of the evidence as to the loss of time incurred or actual injury received; but these appear to have cut no figure in the case. It was charged by the court below, and held by the court above, that it was not a case for exemplary damages. The discussion related to the propriety of an instruction that the jury might take into consideration and give damages for 'the outrage and indignity' put upon the plaintiff. The instruction was held correct. Twelve thousand dollars damages were held to indicate passion and prejudice: but the court ordered the verdict to stand, if the plaintiff would accept a judgment for $7,000. Beck, J., however, thought $12,000 not too much, and Day, J., dissented, holding that outrage, indignity, and mental suffering are not elements of compensatory damages. In City of Chicago v. Jones, 66 Ill. 349, an award of $1,000 to a servant girl for breaking her right arm was not deemed excessive. In Collins v. Council Bluffs, 32 Iowa, 324, $15,000 were awarded a married woman for the breaking of the bone of her left thigh, in consequence of ice accumulated on the sidewalk. It appeared that it made her a cripple for life. The court refused to disturb the verdict." (The foregoing is extracted from the master's report.)