[S. F. No. 518.    Department One.—September 8, 1897.]

# LORIN FOX, Respondent, v. OAKLAND CONSOLIDATED STREET RAILWAY, Appellant.

118  55
132  664
118  55
f 135 295
118  55
139  271
118  55
140  522
118  55
j 143  49

NEGLIGENCE—OPERATION OF ELECTRIC RAILWAY—DEATH OF CHILD—APPEAL—CONFLICTING EVIDENCE—CREDIBILITY OF WITNESSES—QUESTION FOR JURY. The credibility of witnesses is a question for the jury; and where. in an action for negligence against an electric railway company for such careless operation of its cars as to cause the death of an infant child of the plaintiff, the testimony of two witnesses for the plaintiff tends to prove the negligence of the defendant, as against conflicting evidence to the contrary, a verdict of the jury for the plaintiff cannot be disturbed upon appeal, upon the ground that such witnesses were unworthy of credence, where there is nothing so inherently or otherwise manifestly incredible in their testimony as to justify the court in ignoring it.

ID.—NEGLIGENCE, WHEN A QUESTION OF FACT.—Negligence is not absolute, but is relative to circumstances, and it is very rarely that a set of circumstances is presented which enables the court, as matter of law, to say that negligence has been shown, but, as a general rule, it is a question of fact, or of inference of fact, to be deduced by the jury from the circumstances proved; and even conceded facts, where there is no conflict in the evidence, may as readily afford a difference of opinion as to the inferences and conclusions to be drawn therefrom, as in cases where the evidence is conflicting, and where there is room for such difference, the question is one of fact for the jury.

ID.—CONTRIBUTORY NEGLIGENCE OF PARENTS—CARE OF CHILD—DEBATABLE QUESTION.—Parents are chargeable with ordinary care in the protection of their minor children; and where a young child had been told by its mother not to leave the house, and she supposed that he remained in the house, but the child left it contrary to her command, while she was engaged in washing, and wandered to another street, where the electric cars were running, and where he had been frequently told not to go, and was there run over and killed, the question whether the conduct of the mother, in permitting the child to be out of her sight for a period of fifteen or twenty minutes, without satisfying herself of its whereabouts, was, under all the circumstances, a want of ordinary care, is a fairly debatable question, which the jury are to determine.

ID.—LIABILITY FOR GROSS NEGLIGENCE—CONTRIBUTORY NEGLIGENCE NOT CONTROLLING.—Where there is evidence tending to show that when the child went upon the railway track, he was a sufficient distance in advance of the approaching car to have enabled those in charge of the car, by the exercise of ordinary care, to have stopped before striking the child, such evidence tends to show gross negligence on the part of the defendant's servants, and to justify a finding for plaintiff, notwithstanding the negligence of the parents in permitting the child to be in the street.

Id.—Duty to Avoid Injury to Negligent Person.—A party having an opportunity, by the exercise of proper care, to avoid injuring another, must do so, notwithstanding the latter has placed himself in the situation by his own negligence or wrong.

Id.—Evidence—Poverty of Plaintiff—Inability to Employ Servants to Keep Child—Contributory Negligence—Erroneous Instructions.— Evidence that the plaintiff had no servants, and was too poor to employ any to keep his child, has no relevant or competent bearing upon the question whether he has given the child that degree of care which the law requires at his hands, and it is erroneous to instruct the jury that the fact that plaintiff is a poor man, if true, is a matter to be considered by them in determining whether or not he has been guilty of contributory negligence.

Id.—Excessive Verdict—Pecuniary Value of Services of Infant.—The jury can award nothing in the way of penalty for the death of the child, nor for the sorrow or grief of his parents, but must confine their verdict to an amount which will justly compensate the father who sues for the death for the probable value of the services of the child during his minority, taking into consideration the cost of his support and maintenance during the early and helpless part of his life; and the deprivation of the comfort, society, and protection of the son can only be considered as affecting the pecuniary value of his services to the plaintiff; and a verdict for six thousand dollars for the death of an infant child four and a half years of age, at suit of the father, is excessive, and must be deemed to have been prompted by improper motives on the part of the jury.

Id.—Pleading—Separate Averments of Damage—Loss of Society—Loss of Earnings—Election.—Where the complaint averred that by the death of the child, caused by the negligence of the defendant, plaintiff had been deprived of the society and companionship of said child, to his damage in the sum of fifty thousand dollars, and further averred that plaintiff had been deprived of his services and earnings of the reasonable value of eight thousand dollars, wherefore plaintiff demanded judgment in the aggregate sum of fifty-eight thousand dollars, it is not error for the court to refuse to require plaintiff to elect upon which of the two separate averments of damage he would rely, the matters alleged not being properly the subjects of separate averments, the loss of society, etc., being but an element in estimating the value of the services; and the objection to the manner of pleading is not to be reached by such motion, though it might, perhaps, be reached by a demurrer for uncertainty or ambiguity.

APPEAL from a judgment of the Superior Court of Alameda County and from an order denying a new trial. F. B. Ogden, Judge.

The averments of the complaint upon the subject of damages were substantially as set forth in the last syllabus. The main facts of the case are stated in the opinion of the court.

Chickering, Thomas & Gregory, and Fitzgerald & Abbott, for Appellant.

The poverty of the plaintiff was not competent to show freedom from contributory negligence. (*Mayhew v. Burns,* 103 Ind. 328; *Indianapolis etc. Ry. Co. v. Pitzer,* 109 Ind. 179; 58 Am. Rep. 387; Patterson's Railway Accident Law, 77; *Mahoney v. San Francisco etc. Ry. Co.,* 110 Cal. 471, 476.) The law does not set up one standard by which to determine the rights or measure the conduct of the rich, and another for the poor. (*Hagan's Petition,* 5 Dill. 96; *Shea v. Potrero etc. R. R. Co.,* 44 Cal. 414; *Delphi v. Lowery,* 74 Ind. 520; 39 Am. Rep. 98; *Pittsburgh etc Ry. Co. v. Powers,* 74 Ill. 341; *Chicago v. O'Brennan,* 65 Ill. 160; *Sherlock v. Alling,* 44 Ind. 184; *Illinois Cent. R. R. Co. v. Baches,* 55 Ill. 388; *Pennsylvania R. R. Co. v. Books,* 57 Pa. St. 339; 98 Am. Dec. 229; *Chicago etc. Ry. Co. v. Bayfeld,* 37 Mich. 205.) We contend that when the evidence is not conflicting, and where the facts are admitted or proved without contradiction, as in the case at bar, it was the duty of the court to determine whether or not plaintiff or his child were guilty of contributory negligence, and that the court should not have submitted to the jury the question as to whether or not the parents exercised reasonable care to prevent the escape of the child onto the street. This rule has been settled by the following cases: *Stevenson v. Southern Pac. Co.,* 102 Cal. 143, 144; *Davis v. California Street C. R. R. Co.,* 105 Cal. 131, 136; *Fernandez v. Sacramento etc. Ry. Co.,* 52 Cal. 45; *Orcutt v. Pacific Coast Ry. Co.,* 85 Cal. 291, 298; *Glascock v. Central Pac. R. R. Co.,* 73 Cal. 137; *Bailey v. Market Street C. Ry. Co.,* 110 Cal. 321, 329. The contributory negligence of the parents in permitting their child to be in a place of danger is, in law, the proximate cause of the accident. (Booth on Street Railways, sec. 390; *Karr v. Parks,* 40 Cal. 188; *Roller v. Sutter Street R. R. Co.,* 66 Cal. 230; *Toledo etc. Ry. Co. v. Grable,* 88 Ill. 441; *Louisville etc. Ry. Co. v. Murphy,* 9 Bush, 522; *Williams v. Railway Co.,* 60 Tex. 205; *Pittsburgh etc. Ry. Co. v. Vining,* 27 Ind. 513; 92 Am. Dec. 269; *St. Louis etc. Ry. Co. v. Freeman,* 36 Ark. 41; *Callaghan v. Bean,* 9 Allen, 401; *Glassey v. Railroad Co.,* 57 Pa. St. 172; *Jeffersonville etc. R. R. Co. v. Bowen,* 40 Ind. 545; *Casey v. Smith,* 152 Mass. 294; 23 Am. St. Rep. 842; *Evansville etc. R. R. Co. v. Wolf,*

59 Ind. 89.) The verdict is excessive, being so disproportioned to the injury produced as to show that the jury must have acted through passion or prejudice. (*Morgan v. Southern Pac. Co.*, 95 Cal. 510, 519; 29 Am. St. Rep. 143; *Wheaton v. North Beach etc. R. R. Co.*, 36 Cal. 591; *Kinsey v. Wallace*, 36 Cal. 462, 480; *Tarbell v. Central Pac. R. R. Co.*, 34 Cal. 616, 623; *Aldrich v. Palmer*, 24 Cal. 513; *McCarty v. Fremont*, 23 Cal. 196; *Russell v. Dennison*, 45 Cal. 337; 50 Cal. 243; *Phelps v. Cogswell*, 70 Cal. 201; *Vicksburg v. McLain*, 67 Miss. 4; *Potter v. Chicago etc. R. R. Co.*, 22 Wis. 615; *Gunderson v. Northwestern Elevator Co.*, 47 Minn. 161; *Strutzel* v. *St. Paul etc. Ry. Co.*, 47 Minn. 543.) The evidence was not sufficient to show negligence of the defendant, which cannot be presumed from the fact of injury, and there is no substantial proof of want of ordinary care. (*Roller v. Sutter Street R. R. Co.*, 66 Cal. 230; *Bailey v. Market Street etc. Ry. Co.*, *supra;* Booth on Street Railway Law, sec. 323; *Maschik v. St. Louis etc. Ry. Co.*, 71 Mo. 276; *Fenton* v. *Railway Co.*, 126 N. Y. 625; *Citizens' Street Ry. Co. v. Cary*, 56 Ind. 396; *Chrystal v. Troy etc. R. R. Co.*, 105 N. Y. 164.) There was no substantial conflict in the evidence. (*Driscoll v. Market Street etc. Ry. Co.*, 97 Cal. 553, 562, 563; 33 Am. St. Rep. 203.)

Frederick E. Whitney, and M. C. Chapman, for Respondent.

Though there is conflict in the authorities, the weight of reason and authority is in favor of the position that a parent of limited means, who cannot maintain help in the care of his child, and has no playground for it, is only responsible for ordinary care, under the circumstances in which he is placed, while ordinary care, in a person of more means, might require greater safeguards. (*Hedin v. City etc. Ry. Co.*, 26 Or. 155; *Kay* v. *Pennsylvania R. R. Co.*, 65 Pa. St. 277; *Pittsburgh etc. R. R. Co. v. Pearson*, 72 Pa. St. 169; *Philadelphia etc. R. R. Co.* v. *Long*, 75 Pa. St. 257; *Winters v. Kansas City etc. Ry. Co.*, 99 Mo. 520; 17 Am. St. Rep. 591; *Walters v. Chicago etc. R. R. Co.*, 41 Iowa, 71, 78; Beach on Contributory Negligence, sec. 135, p. 172.) The question of contributory negligence, under the circumstances of this case, was one of fact for the jury. (*Hedin v. City etc. Ry. Co.*, *supra; Schierhold v. North Beach etc. R. R. Co.*, 40 Cal. 447, 454; *Birkett v. Knickerbocker Ice Co.*, 110 N. Y. 504, 507;

*Kunz v. Troy*, 104 N. Y. 344, 352; 58 Am. Rep. 508; *Morgan v. Illinois etc. Bridge Co.*, 5 Dill. 96; *Weissner v. St. Paul etc. Ry. Co.*, 47 Minn. 468, 471; *Weil v. Dry Dock etc. Ry. Co.*, 119 N. Y. 147, 152; *Houston City etc. Ry. Co. v. Dillon*, 3 Tex. Civ. App. 303; *Baker v. Flint etc. R. R. Co.*, 91 Mich. 298, 307, 308; 30 Am. St. Rep. 471.) If plaintiff was negligent in permitting the child to be upon the street, yet, under the facts, it being possible to stop the car in time to avoid the injury, defendant is liable, ordinary negligence in case of an adult being gross negligence in case of an infant. (*Schierhold v. North Beach etc. R. R. Co.*, *supra*; *Walters v. Chicago etc. R. R. Co.*, *supra*; *Little Rock etc. Ry. Co. v. Barker*, 39 Ark. 491; *Indianapolis etc. Ry. Co. v. Pitzer*, 109 Ind. 179; 58 Am. Rep. 387; *Farris v. Cass Avenue etc. Ry. Co.*, 80 Mo. 325, 328; *Schwier v. New York etc. R. R. Co.*, 90 N. Y. 558.) A railroad company is liable for gross negligence notwithstanding the existence of contributory negligence. (*Esrey v. Southern Pac. Co.*, 103 Cal. 541; *Meeks v. Southern Pac. R. R. Co.*, 56 Cal. 513; 38 Am. Rep. 67, 70; *Frazer v. Railroad Co.*, 81 Ala. 185; *Becker v. Cincinnati St. Ry. Co.*, 2 Ohio Dec. 137; *Winters v. Kansas City R. R. Co.*, 99 Mo. 509, 520; 17 Am. St. Rep. 591.) The denial of the motion to compel an election is not reviewable upon appeal. (*People v. Briggs*, 114 N. Y. 56; *Brady v. Ludlow Mfg. Co.*, 154 Mass. 468.) No special damages were necessary to be averred in this case, and the complaint supports the general verdict. (*Morgan v. Southern Pac. Co.*, 95 Cal. 510, 520; 29 Am. St. Rep. 143; *Gebbie v. Mooney*, 121 Ill. 255; *Schultz v. Third Avenue R. R. Co.*, 89 N. Y. 242, 246, 247.) An objection of uncertainty in pleading cannot be raised for the first time on appeal. (*Seligman v. Armando*, 94 Cal. 314.) The question of credibility of witnesses and probability of their evidence is for the jury. (*Morgan v. Southern Pac. Co.*, *supra*.) The verdict was not excessive. The jury had discretion as to the amount of damages, and no absolute standard can be fixed. (*Redfield v. Oakland etc. Ry. Co.*, 110 Cal. 277, 285, 286; *Howland v. Oakland etc. Ry. Co.*, 110 Cal. 513; *Lake Erie etc. Ry. Co. v. Acres*, 108 Ind. 548; *Louisville etc. Ry. Co. v. Pedigo*, 108 Ind. 481; *Louisville etc. Ry. Co. v. Falvey*, 104 Ind. 409; *Louisville etc. Ry. Co. v. Wood*, 113 Ind. 544.)

VAN FLEET, J.—Action by the father to recover damages resulting from the death of his infant son, alleged to have been caused by the negligence of defendant in running over him with one of its electric cars.

Judgment was for plaintiff, and defendant appeals therefrom and from an order denying it a new trial.

1. Appellant devotes a considerable portion of its brief in an effort to convince us that the evidence fails to show any negligence on the part of defendant. The task has proven fruitless. An examination of the evidence discloses a substantial conflict upon that issue, however much it may be said to preponderate in defendant's favor. Much of counsel's argument in this behalf is expended in endeavoring to demonstrate that the two witnesses whose testimony tends to create the conflict were wholly unworthy of credence, and that therefore the evidence, while apparently conflicting, is not so in substance. But the credibility of witnesses is a question for the jury, so long as the testimony which they give has a legal tendency to establish the fact, and where, as here, there is nothing so inherently or otherwise manifestly improbable in its character as to justify the court in ignoring it.

2. Appellant also contends that under the evidence the plaintiff was shown to have been guilty of contributory negligence in permitting his child to expose himself unattended and unprotected to the dangers of the street, and that that issue should have been withheld from the jury.

The evidence upon this question was in substance this: Plaintiff's dwelling fronted on Tenth street, in the city of Oakland, about one hundred feet from Franklin street, along which ran defendant's railway; his family consisted, at the time, of his wife, a daughter of about thirteen years, and the boy that was killed, aged four and one-half years. The father worked at his trade, and was away from home during the day; the daughter attended school, the little boy remaining at home with his mother, who did her own work. The boy was permitted to play on the sidewalk, there being no front yard, and sometimes with other boys on Tenth street in front of the dwelling, but he had been repeatedly admonished by his parents not to go to Franklin street where the cars ran, because they knew it was dangerous, and he

was not permitted to go there with their knowledge; he was an ordinarily obedient child, and generally, as admonished, played near his home, but would at times stray onto Franklin street without his mother's knowledge; on such occasions, when she discovered the fact, she would either go or send after him. Her daughter, when at home, generally looked after the boy, but when at school the mother had his sole care. To quote from the latter's testimony: "Of course I couldn't watch him every minute; he could open the door and go out, but he was generally a very good child to mind—better than the average child. I tried to keep him in the best I could, anyway. It was not very often that I had occasion to call him away from Franklin street. If he was not in front of the house I would have some one go after him, or go after him myself and bring him back. He very seldom went away when I told him not to go."

On the occasion of the accident the mother was engaged in doing some washing on the back porch of the house. She testified: "I did not know for certain that the little boy was in the street at that time. He came in fifteen or twenty minutes before he was killed, and I told him not to go away. Then I went right on with my washing. I supposed he was in the house. I didn't go right to see, just exactly right away. . . . . There was no one in the house at the time the little boy came in, and I told him not to go out. The little girl, thirteen years old, at the time was helping me on the porch washing. I did not see the accident. There was no servant employed by myself or husband about the premises. The little boy was in the house about fifteen or twenty minutes before he was killed." The boy had gone to Franklin street, got on the defendant's railway in front of an advancing car, and was run over and killed.

This evidence is practically without controversy, and defendant's claim is that it establishes negligence per se which should preclude recovery.

If the term "negligence" signified an absolute quantity or thing to be measured in all cases in accordance with some precise standard, much of the difficulty which besets courts in the solution of this class of cases would be at once dissipated. But, unfortunately, it does not. Negligence is not absolute, but is a thing which is always relative to the particular circumstances of which

it is sought to be predicated.  For this reason it is very rare that a set of circumstances is presented which enables a court to say as a matter of law that negligence has been shown.  As a very general rule, it is a question of fact for the jury—an inference to be deduced from the circumstances; and it is only where the deduction to be drawn is inevitably that of negligence that the court is authorized to withdraw the question from the jury.  The fact that the evidence may be without conflict is not controlling, nor even necessarily material.  Conceded facts may as readily afford a difference of opinion as to the inferences and conclusions to be drawn therefrom as those which rest upon conflicting evidence; and, if there be room for such difference, the question must be left to the jury.  (Beach on Contributory Negligence, sec. 163; *Schierhold v. North Beach etc. R. R. Co.,* 40  Cal. 447, 453; *Van Praag v. Gale,* 107 Cal. 438.)

Within these principles the evidence in this case cannot be said to establish negligence per se.  Parents are chargeable with the exercise of ordinary care in the protection of their minor children; and whether the conduct of the mother, for which plaintiff is to be held responsible, in permitting the deceased child to be out of her sight for a period of from fifteen to twenty minutes, without satisfying herself of his whereabouts, was, under all the 'mstances, a want of ordinary care, was, we think, a fairly 'ble question.   (*Schierhold v. North Beach etc. R. R. Co., Meeks v. Southern Pac. R. R. Co.,* 56 Cal. 513; 38 Am. Rep. 67; *Birkett v. Knickerbocker Ice Co.,* 110 N. Y. 504.)

But, were defendant's contention sustainable in this respect, it would not necessarily determine the plaintiff's right to recover.  There was evidence tending to show that when the child went upon the railway track he was a sufficient distance in advance of the approaching car to have enabled those in charge thereof, by the exercise of ordinary care, to have stopped before striking him.

This evidence, if believed by the jury,  and their verdict implies that it was, would tend to show gross negligence on the part of defendant's servants, and justify a finding for plaintiff notwithstanding the negligence of the parents in permitting the child  to be in the street.  This is upon the principle, now firmly established in this state, that a party having an opportunity by the exercise of proper care to avoid injuring another must do so,

notwithstanding the latter has placed himself in the situation of danger by his own negligence or wrong. (*Schierhold v. North Beach etc. R. R. Co., supra; Needham v. San Francisco etc. R. R. Co.*, 37 Cal. 409; *Meeks v. Southern Pac. R. R. Co., supra; Esrey v. Southern Pac. R. R. Co.*, 103 Cal. 541, 544; *Cunningham v. Los Angeles Ry. Co.*, 115 Cal. 561.)

3. Defendant complains of the action of the court in another respect affecting its defense of contributory negligence.

The court, against defendant's objection, permitted plaintiff to testify that he had no servants, and was too poor to employ any; and in submitting the case to the jury charged them that "the fact that plaintiff is a poor man, if that be true, constitutes no ground why he is entitled to a verdict, but is a matter to be considered by you in determining whether or not he has been guilty of contributory negligence." This action of the court is assigned as error, in that it submitted to the jury an element having no competent bearing upon the issue.

The question whether the poverty of the parents can be considered by the jury in such a case in determining the question of their negligence is one which has given rise to some contrariety of expression, both from courts and law-writers; but we think the better reasoning decidedly against its consideration. We are unable to perceive wherein the fact that a parent may or may not have the means to employ servants to look after his young children can have any relevant or competent bearing upon the question whether in any instance he has given them that degree of care which the law requires at his hands. Care, like its correlative negligence, is a relative term, and is to be judged by the circumstances as they exist, not as they might have existed under other and different conditions; and the question, therefore, is, What, under the facts actually surrounding him at the time, and of which he had knowledge, could reasonably be demanded of the parent? This is a question which cannot be affected by a consideration of what he could or should have done under other circumstances. As suggested by the supreme court of Indiana in *Mayhew v. Burns*, 103 Ind. 339, 340, in holding the inadmissibility of such evidence: "Whether one was negligent or not in a given case must be determined by considering his or her conduct as it related to the particular circumstances of the occasion or affair out of which the case arises.

"It cannot be solved by showing their general pecuniary condition. Their ability to act, and what they did or omitted to do, with reference to the particular emergency, is all that is important. All that was necessary for the plaintiff to show in this case was the actual situation of his household, and that neither he nor those whom he had intrusted with his child were guilty of any act or omission in relation to the child and the excavation into which it fell. This was a question of conduct, not of property. The ability to comprehend and guard against the danger when comprehended, and the acts and omissions of the plaintiff and his housekeeper after the facts were known, were all the subjects material to the inquiry. His duty as it related to his child and the sources of danger were the same whether his household was managed as it was from choice or necessity. It would be monstrous to assume that the care or solicitude of a parent for the safety of a child in respect of danger to its person had any relation to his pecuniary condition."

And again by the same court in the later case of *Indianapolis etc. Ry. Co. v. Pitzer,* 109 Ind. 179, 190, 58 Am. Rep. 387, the doctrine is reaffirmed, and it is further suggested: "Any other rule would be impracticable as well as unsound in principle. If the pecuniary condition of the parent is accepted as the standard, all is uncertain, for no definite amount of pecuniary means can be taken as a guide, since it would be impossible to determine what a parent should be worth in order to impose upon him the duty of employing nurses or attendants for his children."

Judge Dillon, having occasion to consider this question, expresses his views thereon in this terse fashion:

"Some of the cases seem to make the liability depend upon the means of the parents, and to countenance a distinction as to contributory negligence between parents able to employ nurses or attendants, and those who are not. This distinction may be doubted, for there is not in this country one rule of law for the rich and a different rule for the poor. It extends its protecting shield over all alike." (*Hagan's Petition,* 5 Dill. 96.)

And this court, in the very recent case of *Cunningham v. Los Angeles Ry. Co., supra,* in considering an instruction bearing upon the same question, took occasion to say: "We think the court should have refrained from charging that the law does not require parents to keep an attendant with their young children; and that

they are not required to shut them up. While, abstractly speaking, these things are perfectly true, the question of whether such precautions are necessary under any given circumstances to constitute ordinary care for the safety of their children with which parents are charged, is one of fact for the jury, and not for the court to determine as matter of law."

The opposite doctrine would seem to have been largely built up from observations made by judges in discussing the general subject of the contributory negligence of parents in cases where the question of their pecuniary condition was not directly involved. In none of the cases cited by respondent does the question appear to have arisen upon the evidence or instructions, but was suggested in the course of reasoning pursued by the appellate court. Mr. Beach (Beach on Contributory Negligence, sec. 135) takes this side of the controversy; but the cases to which he refers are the same, with the exception of a recent one of the same type from Oregon (*Hedin v. City etc. Ry. Co.,* 26 Or. 155), to which we are referred by respondent. Criticising these cases referred to by Beach, Mr. Patterson (Patterson's Railway Accident Law, sec. 81) says: "It has been held that poor parents of infant children are not contributorily negligent if they do not prevent their infant children from straying into the public streets or upon the lines of highways. The judgments in those cases seem to have been largely influenced by the sentimental reflections of the judges upon the poverty of the plaintiffs, and their consequent inability to employ servants to watch their children, and the hardship of requiring them to keep those children within doors when they could not safely go abroad; but those learned judges failed to give due weight to the consideration that the railway was not responsible for the acts of the parents in bringing the children into the world, nor for that degree of misfortune which retained those parents in a condition of more or less want, and that there is no rule of law nor principle of justice which compels railways to insure the public against the necessary incidents of poverty, nor which entitles people, either poor or rich, to make at the expense of railways profitable speculations out of the deaths of the children whom their own neglect of parental duty has exposed to peril."

In *Mayhew v. Burns, supra,* referring to this same line of cases,

it is said: "The cases relied on are cases where children escaped from the observation of persons in whose care they were left, and sustained injury by going on railway tracks. It is said in most of these cases that parents who are poor frequently find it necessary, while engaged by their duties, to leave their younger children in the custody of older sisters or brothers, who have attained to sufficient age and intelligence to guard them from danger, and that negligence should not be imputed to them if they escape their oversight and sustain injury. We should have no difficulty in saying as much, regardless of the pecuniary condition of the parents. We can conceive of no attendant who would be more solicitous for the welfare of an infant than its older sister or brother, who was of sufficient age and intelligence to be left as its guardian. It is idle to say that the propriety or impropriety of so leaving an infant is to be determined by an inquiry concerning the amount of property the parent owns. . . . . We can discover no principle upon which it can be determined whether negligence can be attributed to one in a given case by an inquiry into the state of his fortune."

After a careful review of the authorities we are clearly of the opinion that the question of the parent's negligence in any given case cannot be made to turn upon the state of his finances, and that the rulings of the court below in this respect were erroneous.

Plaintiff contends that, if wrong, the rulings did not constitute prejudicial error for the reason, suggested above, that there was evidence entitling plaintiff to recover notwithstanding any question of contributory negligence. Whether that be true or not we need not decide, since there must be a new trial upon another ground.

4. It is claimed that the verdict was so excessive as to show passion or prejudice by the jury in its verdict, and this contention must be sustained.

There was no averment or evidence of peculiar or special damages, nor of a right to exemplary or punitive damages, the plaintiff's cause of action resting solely upon his right to recover for the loss of the services of his child resulting from its death. The evidence simply tended to show that the boy was four and a half years old; was an ordinarily bright, healthy, affectionate, and obedient child; with an expectancy of life which, if realized, would have carried him considerably beyond the age of majority.

The jury were properly instructed that they could award nothing in the way of penalty for his death, nor for sorrow or grief of his parents, but must confine their verdict to an amount which would justly compensate plaintiff for "the probable value of the services of the deceased until he had attained his majority, taking into consideration the cost of his support and maintenance during the early and helpless part of his life"; that while they could consider the fact that plaintiff had been deprived of the comfort, society, and protection of his son, this consideration could only go to affect the pecuniary value of his services to plaintiff.

Upon the evidence and these instructions the jury gave a verdict for six thousand dollars.

We think it quite manifest, upon its face, that the verdict was actuated by something other than a consideration of the evidence. Under no conceivable method or rule of compensation permissible under the evidence could such a result have been attained. There was nothing to indicate that the value of the child's services would have been greater than that of the ordinary boy of his age, assuming that such a fact would have been pertinent. He was a mere infant, and for many years at best, under ordinary conditions—and it is by such we must judge—he would have remained, however dear to their hearts, a subject of expense and outlay to his parents, without the ability to render pecuniary return. And common experience teaches further that, even after reaching an age of some usefulness, he yet would continue for the better part of his remaining years of minority more a source of outgo than of income. When we regard the probable number of years to be taken in his schooling, in this day of general desire and necessity for education and knowledge, comparatively little valuable time would be left to be devoted to the service of the parent.

But assuming that the deceased would have been set to useful and valuable employment of some appropriate character as early as ten years of age, which is unusual, at no average rate of income or wages which he could reasonably have earned would it be at all probable that in the time intervening his majority he could have earned, over and above the cost and expense of his maintenance, the very large sum given by the verdict.

Under the circumstances of the case it is solely by the probabilities that these things can be estimated. And while in no sense conclusive, we have the right, and it is most reasonable in judging of the probable character of occupation the deceased would have pursued, to regard, with the other circumstances surrounding him, the calling of his father—since experience teaches that children do very frequently pursue the same general class of business as that of their parents. (*Walters v. Chicago etc. R. R. Co.*, 41 Iowa, 71, 73.)

From these considerations we think it obvious, as contended, that the verdict was prompted by improper motives on the part of the jury. While it is the province of the latter to estimate the extent of the injury, the right is not arbitrary, but must be justly exercised within the evidence. And when it is apparent that the award "is obviously so disproportionate to the injury proved as to justify the conclusion that the verdict is not the result of the cool and dispassionate discretion of the jury," it will be set aside. (*Morgan v. Southern Pac. Co.*, 95 Cal. 510; 29 Am. St. Rep. 143; *Tarbell v. Central Pac. R. R. Co.*, 34 Cal. 623; *Sloane v. Southern Cal. Ry. Co.*, 111 Cal. 668, 687; *St. Louis etc. Ry. Co. v. Robbins*, 57 Ark. 377; *Chicago etc. Ry. Co. v. Bayfield*, 37 Mich. 205, 215; *Potter v. Railroad Co.*, 22 Wis. 615.)

5. The remaining points call for no extended notice.

We discover no material error in the refusal of the court to require plaintiff to elect upon which of the two separate averments of damage he would rely. They were not properly the subjects for separate averment, the loss of society, comfort, etc., being but an element in estimating the value of services. The objection to the manner of pleading might perhaps have been reached by a demurrer for uncertainty or ambiguity.

The instruction refused on the subject of exemplary or punitive damages was, we think, substantially covered in the charge of the court; the other instruction refused did not correctly state the law.

The judgment and order are reversed and the cause remanded for a new trial.

Harrison, J., and Beatty, C. J., concurred.

Hearing in Bank denied.