[No. S051085. Jan. 6, 1997.]

KENTUCKY FRIED CHICKEN OF CALIFORNIA, INC., Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; KATHY BROWN, Real Party in Interest.

## COUNSEL

Genson, Even, Crandall & Wade, Edwin B. Brown, Tod M. Castronovo and John P. Fuchs for Petitioner.

Sharon L. Browne, Anne M. Hawkins, Paul N. Halvonik, Fred J. Hiestand, Haight, Brown & Bonesteel, Roy G. Weatherup, Lyn Skinner Foster, Jon M. Kasimov, Horvitz & Levy, Peter Abrahams, Julie L. Woods and Elizabeth Skorcz Anthony as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Richard F. G. Thomas for Real Party in Interest.

## OPINION

**BAXTER, J.**—We are asked to decide whether a shopkeeper owes a duty to a patron to comply with an armed robber's demand for money in order to avoid increasing the risk of harm to patrons. The Court of Appeal held that such a duty exists. Petitioner Kentucky Fried Chicken of California, Inc. (KFC), disagrees and argues that the decision of the Court of Appeal conflicts with that in *Vandermost* v. *Alpha Beta Co.* (1985) 164 Cal.App.3d 771 [210 Cal.Rptr. 613] (*Vandermost*).

We conclude that a shopkeeper does not have a duty to comply with the unlawful demand of an armed robber that property be surrendered. Although the circumstances of this case differ from those considered by the *Vandermost* court, the reasoning of *Vandermost* and the authorities on which it relied are persuasive. Recognition of a duty to comply with an unlawful demand would be contrary to public policy as it would encourage similar unlawful conduct.

We shall, therefore, reverse the judgment of the Court of Appeal.

I

*Background*

This mandamus proceeding arises out of the denial of KFC's motion for summary judgment in a negligence action. Real party in interest Kathy Brown named KFC a defendant in a complaint seeking general and special damages for emotional distress, hospital and medical expenses, loss of

wages, and loss of earning capacity. Brown alleged that she was a customer at a Redondo Beach restaurant operated by KFC when she was seized and held at gunpoint by an unidentified person who threatened to seriously injure Brown if employees of KFC did not give him the money in the cash register. The complaint alleged that an employee did not comply promptly with the robber's demands and that her delay and other actions caused further injury to plaintiff and resulted in additional threats of grave injury to Brown.

The complaint also alleged that KFC failed to provide proper security, and failed to properly train its employees in how to respond to criminal activity to avoid endangering or further endangering its customers.

KFC answered the complaint, denying all allegations of the complaint. As affirmative defenses KFC claimed, inter alia, that the complaint failed to state a cause of action because it had no duty to plaintiff to comply with a robber's unlawful demands. In the absence of the duty and breach of the duty elements, the complaint did not state a cause of action in negligence.

KFC then moved for summary judgment. (Code Civ. Proc., § 437c.)

It appears from documents offered in support of the motion for summary judgment that Brown was the only customer in the KFC restaurant when she was accosted by the robber, who put a gun to her back. She complied with his demands and surrendered her cash and her wallet to him. He then demanded that a clerk open the cash register and give him all of the money. The clerk did not do so. Instead, she said she would have to go to the back of the restaurant for a key. The robber then became extremely agitated, shoved his gun harder into Brown's back, and told the employee he would shoot Brown if the employee did not "quit playing games" and open the cash register immediately. Brown, who believed she was going to die because of the employee's actions, then "screamed" at the clerk to open the drawer and give the money to the robber, at which point the clerk complied and opened the cash register drawer. The robber seized the money and fled. The robber did not become agitated and angry until the cashier told him that she would have to get the keys to the register. KFC was unaware at that time of any prior similar crimes or any crimes at this store.

KFC argued that it was entitled to judgment as a matter of law since it owed no duty of care to Brown to protect her against violent criminal acts of unknown third parties while on its premises, and that even if a duty of care was owed, no duty was breached by a failure to provide adequate security or properly train its employees to respond to criminal activity.

In a petition for writ of mandate by which it sought to overturn the order denying the motion for summary judgment, KFC argued only that it did not

have a duty to Brown, a customer, to comply with the demands of the robber in order to avoid injury to Brown. Therefore, that is the only issue the Court of Appeal was called upon to address and is the one we address here.

II

*Court of Appeal Decision/Vandermost*

As the Court of Appeal recognized, the existence of a duty is a question of law for the court. (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 [25 Cal.Rptr.2d 137, 863 P.2d 207]; *Ramirez* v. *Plough, Inc.* (1993) 6 Cal.4th 539, 546 [25 Cal.Rptr.2d 97, 863 P.2d 167, 27 A.L.R.5th 899].) The Court of Appeal applied general principles applicable to the liability of a landowner or occupier for injury to persons on premises held open to the public. Under those general principles, when determining the existence and scope of the duty to protect business invitees from the criminal conduct of third parties, the court balances the foreseeability of the harm against the burden of the duty. If the burden is great, a high foreseeability of harm may be required, but a lesser degree of foreseeability may be required if " ' "there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means." ' " (6 Cal.4th at p. 679.)

The duty of a proprietor of a business establishment to business invitees generally includes a "duty to take affirmative action to control the wrongful acts of third persons which threaten invitees where the occupant has reasonable cause to anticipate such acts and the probability of injury resulting therefrom." (*Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114, 121 [52 Cal.Rptr. 561, 416 P.2d 793].)[1] We recognized in *Taylor* that a business proprietor is not an insurer of an invitee's safety. There is a

---

[1] In *Taylor*, the plaintiff had been assaulted and seriously injured by a person who had twice approached her inside a bowling alley and importuned her to allow him to go to her home for sexual relations. She had rebuffed him and had reported the offensive conduct to Bishop, a person employed by the business as a "bouncer." When she later prepared to leave the building, Bishop warned her that the man she had rebuffed was there and told her she should not leave. She ignored the warning and was attacked and seriously injured in the parking lot of the business by that man.

This court rejected the argument of the business owner that any duty owed to the patron was fulfilled by the warning given to her, noting that Bishop was aware of the potential danger, but the warning was inadequate to apprise the victim of the specific danger posed by the person he described as a "goofball." Moreover, even an adequate warning would not have enabled the victim to avoid the danger while still exercising her right to enter the parking lot to obtain her car, a right which a patron is entitled to receive. (*Taylor* v. *Centennial Bowl, Inc.*, *supra*, 65 Cal.2d at p. 123.) The business operator breached the duty owed under the circumstances which included the fact that ". . . Bishop could have easily protected her from

requirement, however, that reasonable care be taken for their safety, and liability exists for injuries resulting from a breach of that duty of reasonable care. (*Ibid.*)

When the liability of a landowner to persons on his or her property is in issue, additional factors are considered in determining whether a duty should be imposed and, if so, the extent of that duty. ■ "Some factors that courts consider in determining the existence and scope of a duty in a particular case are: '[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.'" (*Ann M.* v. *Pacific Plaza Shopping Center, supra,* 6 Cal.4th at p. 675, fn. 5, quoting *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

Although these rules had not heretofore been applied to create a duty to cooperate with an armed robber, the Court of Appeal concluded that a duty existed in the circumstances of this case. The court reasoned: A robbery was in progress. The robber was holding a gun to the back of the patron, demanding that the cashier open the cash register and give him the money. It was reasonably foreseeable that if the cashier did not cooperate with the robber the hostage would be terrorized and potentially shot to death. That foreseeability was made clear in crime prevention pamphlets distributed by the Redondo Beach Police Department, which were among the evidence offered in opposition to the motion for summary judgment. The pamphlets advised readers that they should never refuse an armed robber's demand for money, an admonition which implicitly recognized the likelihood of an increased risk of injury or death if the victim resisted the demand.

Applying the remaining factors this court identified in *Ann M.* v. *Pacific Plaza Shopping Center, supra,* 6 Cal.4th 666, the Court of Appeal concluded that there was a high degree of certainty that the plaintiff suffered injury, that the injury was closely connected with the defendant's conduct, and that the burden on defendant of avoiding the injury by complying with the robber's demand was "slight."

KFC contends that this holding conflicts with that in *Vandermost, supra,* in which the Court of Appeal concluded that no duty to comply with a

the danger he apparently anticipated by simply accompanying plaintiff to her car . . . ." (*Id.* at p. 124.)

robber's demands should be imposed because adverse consequences to the public would result. There, the plaintiff was with a group of friends seated in a restaurant. He heard a commotion near the cash register and a sound like a firecracker. He went to investigate and saw Moreno talking to the cashier. Moreno demanded that the cashier " 'give me the money or I am going to shoot someone,' " after which Moreno fired into the ceiling. (*Vandermost, supra,* 164 Cal.App.3d at p. 775.)

The cashier closed the cash drawer, causing it to lock, and fled to the kitchen after making eye contact with the plaintiff. Moreno attempted unsuccessfully to open the cash register. He appeared to be " 'pissed off, angry, confused.' " (*Vandermost, supra,* 164 Cal.App.3d at p. 775.) As plaintiff moved toward the exit, Moreno approached him and demanded that plaintiff give him all of plaintiff's money. When plaintiff responded that he did not have any money, Moreno said " 'Oh yeah' " and shot plaintiff in the arm, after which he said " 'That will prove I'm not fucking around.' " (*Ibid.*)

The *Vandermost* court recognized the rule of *Taylor* v. *Centennial Bowl, Inc., supra,* 65 Cal.2d 114, that a landowner or occupier who conducts a business open to the public has a duty to protect visitors from wrongful acts of third persons if there is reasonable cause to anticipate that conduct and the probability of injury to the patron. It concluded, however, that while a jury could infer that it was reasonably foreseeable to the clerk that Moreno would shoot a patron, the connection between the clerk's conduct and the plaintiff's injury was "tenuous," and that any moral blame under the circumstances was that of Moreno. (164 Cal.App.3d at p. 779.)

The *Vandermost* court also reasoned that the policy implications of imposing a duty to comply with a robber's demands to avoid provoking the robber into injuring a patron militated against recognizing such a duty. The court adopted the view of the Illinois Supreme Court in *Boyd* v. *Racine Currency Exchange, Inc.* (1973) 56 Ill.2d 95 [306 N.E.2d 39].

In *Boyd,* a robber seized a patron of the defendant money exchange and threatened to shoot the patron unless the teller complied with a demand that the teller give money to the robber or allow him into the enclosed teller's booth. The teller refused and the robber shot the hostage. The Illinois Supreme Court feared that if a duty to comply with such demands were to be imposed, it would benefit the criminal without offering assurance that compliance with the demand would reduce the risk to the hostage. "[T]he consequence of such a holding may well be to encourage the use of hostages for such purposes, thereby generally increasing the risk to invitees upon

business premises. If a duty to comply exists, the occupier of the premises would have little choice in determining whether to comply with the criminal demand and surrender the money or to refuse the demand and be held liable in a civil action for damages brought by or on behalf of the hostage. The existence of this dilemma and knowledge of it by those who are disposed to commit such crimes will only grant to them additional leverage to enforce their criminal demands. The only persons who will clearly benefit from the imposition of such a duty are the criminals. In this particular case the result may appear to be harsh and unjust, but, for the protection of future business invitees, we cannot afford to extend to the criminal another weapon in his arsenal." (*Boyd* v. *Racine Currency Exchange, Inc., supra,* 306 N.E.2d 39, 42.)

The Court of Appeal here disagreed with *Vandermost* that imposing a duty on a shopowner to comply with a robber's demands would lead to increased hostage taking, declining to assume that street criminals are aware of developments in tort law and would therefore have reason to believe that taking a hostage would ensure compliance by the robbery victim. The court reasoned that, if robbers are aware of prevailing wisdom, that wisdom is that one should not resist the demands of an armed robber. Therefore the consequence to the community of recognizing a duty to comply would protect patrons from the increased risk of harm created by "misguided attempts to resist or overwhelm an armed robber." The court concluded that the value of human life and safety outweighed the interest the retailer had in frustrating the robber's efforts to take property.

## III

### *Discussion*

The rule which plaintiff asks us to refine and apply here was set out more than 30 years ago in the Restatement Second of Torts:

"(1) A common carrier is under a duty to its passengers to take reasonable action

"(a) to protect them against unreasonable risk of physical harm, . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"*(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.*" (Rest.2d Torts, § 314A, italics added (section 314A).)

Section 314A identifies "special relations" which give rise to a duty to protect another. Section 344 of the Restatement Second of Torts expands on that duty as it applies to business operators.

"A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure to the possessor to exercise reasonable care to

"(a) discover that such acts are being done or are likely to be done, or

"(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it." (Rest.2d Torts, § 344 (section 344).)

Comment f to section 344 further explicates its intent: "Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection." (§ 344, com. f, pp. 225-226.)

Where a warning of danger is not adequate to protect a patron from intentional harmful acts of a third party, a landowner must "exercise reasonable care to use such means of protection as are available." (§ 344, com. d, p. 225.) When criminal conduct is ongoing, that duty requires that the landowner or occupier take such appropriate action as is reasonable under the circumstances to protect patrons. (*Taylor* v. *Centennial Bowl, Inc., supra,* 65 Cal.2d 114, 124-125.)

The Restatement rule continues to be the generally accepted test of liability of a business owner for injuries on the business premises caused by third party criminal conduct. A land occupier "must act as a reasonable person to avoid harm from the negligence of contractors and concessionaires as to activities on the land, as well as that of other persons who have entered it, and even from intentional attacks on the part of such third persons. He is

required to take action when he has reason to believe, from what he has observed or from past experience, that the conduct of the other will be dangerous to the invitee, but not if there is no reason to anticipate a problem." (Prosser & Keeton, Torts (5th ed. 1984) Invitees, § 61, p. 428, fns. omitted.)

It is true as the dissent notes, that the standard of a "reasonable prudent person under the circumstances" is the general standard of care. It is also true, however, as Justice Kennard acknowledged in *Ramirez* v. *Plough, Inc.*, *supra*, 6 Cal.4th 539, 547, but does not recognize here, that in particular situations a more specific standard may be established by judicial decision, statute or ordinance.

California has never recognized a duty to surrender property to an armed robber to protect others, and neither *Ann M.* v. *Pacific Plaza Shopping Center*, *supra*, 6 Cal.4th 666, nor *Rowland* v. *Christian*, *supra*, 69 Cal.2d 108, in which we applied the general principles of negligence law to determine the duty of a landowner to prevent injury to persons present on the land, resolves the question presented here. Those cases did not consider whether a shopowner must comply with a robber's unlawful demand for money in an effort to avoid threatened harm to third persons. The situation is not comparable to that of a shopkeeper who, on the basis of experience, has reason to know that potentially injurious unlawful conduct may occur in the future and for that reason has a duty to take action to deter or prevent that conduct. Neither the Restatement rules nor our past decisions create a duty to acquiesce in an unlawful demand for the surrender of property.

While this court has not expressly considered the duty of a landowner or occupier whose premises are open to the public when faced with an armed robber, no state has held that the law imposes a duty to comply with a robber's demands. While some hold that a shopkeeper may actively resist the robbery attempt only if the resistance is reasonable in light of the threat to third persons, none hold that the duty to avoid harm to patrons or others on the premises is breached if the shopkeeper simply refuses to surrender property. Although there was no active resistance to the robber in this case, decisions in which the shopkeeper or employee did resist are instructive. None of those which hold that resistance may be unreasonable in some circumstances suggest that a shopkeeper who does not actively resist or intentionally engage in other provocative conduct has breached a duty to a patron, and the majority of courts which have considered the question hold that active resistance is permitted.

The Indiana appellate court concluded that resistance was in the public interest even in situations where it resulted in harm to third parties. "There

is, and must continue to be, a great public interest in the prevention of crime and in the speedy apprehension of criminals. To that end the victim of a crime, as vicious as armed robbery, during the course of such criminal act, is excused, justified and to be held privileged from ordinary resistance which might otherwise cause actionable damage." (*Yingst* v. *Pratt* (1966) 139 Ind.App. 695, 700 [220 N.E.2d 276, 279].)

In *Schubowsky* v. *Hearn Food Store, Inc.* (Fla.Dist.Ct.App. 1971) 247 So.2d 484: "The defendants' employee was privileged and justified in defending his own life and the employers' property when faced by the armed robbers. In resisting the robbers, the proprietor had justification over and above an ordinary elective act entailing risk to a third person. When an opportunity arose to get the 'drop' on the robbers, the proprietor was entitled to act upon it in resistance of the robbery. The fact that in the course of his resistance, which succeeded in averting the robbery, the customer who was present was shot by one of the robbers, does not operate to negative the justification of the proprietor to so act in such circumstances. A victim of a violent crime, such as armed robbery, is justified and privileged against liability for an injury which may result from his resistance which otherwise could cause actionable damage."

The Arizona court held in *Bennett* v. *Estate of Baker* (1976) 27 Ariz. App. 596 [557 P.2d 195] that "no duty to accede to criminal demands should be imposed. . . . [Defendant bartender] was faced with two alternatives. He could either yield the right and privilege of protecting his property, or he could assert that same right and privilege by attempting to resist the crime being perpetrated upon him." (557 P.2d at p. 198.)

In *Helms* v. *Harris* (Tex.Civ.App. 1955) 281 S.W.2d 770, a patron was shot when a storekeeper resisted an armed robbery. Liability was not imposed because, in the view of that court, the defendant's actions were not the proximate cause of plaintiff's injury and it was not foreseeable that his conduct would lead to the injury. The court recognized that liability might be found in other circumstances. "Acts of self-defense or in defense of one's property have always been in accord with the public policy of Texas, and those persons having sufficient courage to so act legally enjoy the privilege. It is only when acts in self-defense or in defense of one's property are committed under circumstances where the actor should realize that such acts create an unreasonable risk of causing harm to innocent third parties that such third parties may subject the actor to liability." (*Id.* at pp. 771-772.)

Other courts also balance the right of a store owner to take such action as is deemed appropriate to protect the owner and his property against the duty

of the owner to prevent foreseeable injury to customers when resisting a robbery. In *Genovay* v. *Fox* (1958) 50 N.J. Super.Ct. 538 [143 A.2d 229] (revd. on other grounds (1959) 29 N.J. 436 [149 A.2d 212]), the court upheld a finding of liability, but did so where the defendant and others confronted and attempted to resist an armed robber. An armed gunman held both employees and patrons of a bowling alley at gunpoint, herding them into the area in which a safe was located, and ordered the owner to open the safe. While the hostages were being moved, two employees escaped. When the safe was opened, the owner removed some cash which he placed in a closet, and then told the robber that the remaining money was in a box that was bolted to the safe. The robber would have to take it out himself. When the robber hesitated, one hostage tackled him and was shot and killed. The plaintiff, another hostage, then wrestled with the gunman and was himself injured.

Plaintiff's theory was that once the robbery was underway, the defendant had a duty to refrain from conduct that might have the effect of inducing or increasing the likelihood of resistance because such activity would create an unreasonable risk of serious injury or death. In assessing the reasonableness of the defendant's conduct, the court considered both the risk of harm it posed to others and the utility of the conduct. It assumed that the defendant had increased the risk of serious injury to the patrons appreciably, and recognized that protection of property and frustration of crime could be offered as justification in terms of social utility. The emergency situation was also a factor, but that was tempered if the defendant's activity was designed to entrap the robber. Weighing these factors, the court concluded: "[T]he seriousness of the risk of grave injury or death inherent in the confrontation of the group of men in defendant's company by the armed robber was such that there cannot be said to have been any right on defendant's part as a matter of law to take any measures he might choose to frustrate the gunman and secure his capture without regard to the effect of such actions on the safety of the others present. The social utility of such objectives was for the consideration of the jury in forming an over-all judgment as to whether what they concluded the defendant had done or caused to be done constituted reasonable conduct, in the light of all the circumstances, including the hazards to which defendant's companions were exposed. The value of human life and of the interest of the individual in freedom from serious bodily injury weigh sufficiently heavily in the judicial scales to preclude a determination as a matter of law that they may be disregarded simply because the defendant's activity serves to frustrate the successful accomplishment of a felonious act and to save his property from loss." (*Genovay* v. *Fox, supra*, 143 A.2d 229, 239-240.)

The United States Court of Appeals for the Tenth Circuit, applying Kansas law (*Kimple* v. *Foster* (1970) 205 Kan. 415 [469 P.2d 281]), held in *Kelly* v. *Kroger Company* (10th Cir. 1973) 484 F.2d 1362, that a land occupier has a duty to protect customers from foreseeable harm during an armed robbery. There a robber took a patron hostage during the robbery of a grocery store. He seized the patron, whom he used as a shield, when police responded to a silent alarm triggered by store employees, entered, and shot at the robber. The robber forced the patron to accompany him as he attempted to escape with police in pursuit, and then shot the patron, killing her. The theory of the complaint was that the defendant was negligent in actions taken during the robbery which increased the risk of harm to patrons. The court concluded that in the situation that had developed, the manager of the store should not have taken action which increased the hazard and in fact caused the injury. The foreseeability of the injury was a decisive factor in the decision as the court emphasized that the defendant had issued a pamphlet advising employees what they should do in a holdup. The pamphlet said that nothing should be done that would excite or startle a robber, and that no verbal alarm should be given in the street because to do so would greatly increase the probability of injury.

The North Carolina Court of Appeals employed similar reasoning, citing *Kelly* v. *Kroger Company, supra*, 484 F.2d 1362, in *Helms* v. *Church's Fried Chicken, Inc.* (1986) 81 N.C.App. 427 [344 S.E.2d 349, 351], where it affirmed "the general principle that a defendant owes a duty not to increase foreseeable risk of harm to another." There a fast-food store employee loudly told a departing customer to call the police because the establishment was being robbed. The robber thereupon assaulted the customer. The court held that if the employee's action increased the hazard to patrons, and was negligent under the circumstances, liability could be imposed.

The Kentucky Court of Appeals considered and rejected a claim that employees of a shopkeeper protecting the owner's property had a duty to patrons to comply with a robber's demands in *Adkins* v. *Ashland Supermarkets, Inc.* (Ky.Ct.App. 1978) 569 S.W.2d 698. The complaint alleged that employees of a grocery store disobeyed orders of an armed robber. That action and "quarrelsome" statements provoked the robber until he discharged his pistol, killing the "store operator" and wounding the plaintiff and another. (*Id.* at p. 699.) The court held that the operator's duty to keep the premises reasonably safe for invitees did not include a duty to comply with the robber's demands to avoid increasing the risks of criminal conduct. The court held that store operators had the right to resist, verbally or physically, to save themselves and/or their property, and were not negligent in doing so.

The court also indicated agreement with *Bennett* v. *Estate of Baker, supra,* 557 P.2d 195, in which the court reasoned, as did the *Vandermost* court, that compliance with the demands of a criminal does not offer sufficient assurance that the risk to an invitee will be substantially reduced. Therefore, only the criminal would benefit from imposition of a duty to comply. Finally, it concluded as did the *Vandermost* court "that to hold otherwise would abandon or so weaken the objective of social utility that the store owners and proprietors would be coerced into offering total acquiescence to armed robbers for fear of civil litigation which, in effect, furnishes a criminal with an additional coercive advantage." (*Adkins* v. *Ashland Supermarkets, Inc., supra,* 569 S.W.2d at p. 700.)

The Illinois appellate court reached the same conclusion in *Bence* v. *Crawford Sav. & Loan Ass'n* (1980) 80 Ill.App.3d 491 [35 Ill.Dec. 902, 400 N.E.2d 39], following the reasoning of the Illinois Supreme Court in *Boyd* v. *Racine Currency Exchange, Inc., supra,* 306 N.E.2d 39, on which the *Vandermost* court also relied, and that of the New Jersey Supreme Court in *Goldberg* v. *Housing Auth. of Newark* (1962) 38 N.J. 578 [186 A.2d 291, 10 A.L.R.3d 595]. These courts concluded that foreseeability of the event alone was not determinative. The New Jersey court held that existence of a duty was "ultimately a question of fairness. The inquiry involves a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." (186 A.2d at p. 293.) The *Bence* circumstances presented a variation on the duty to acquiesce questions we face here. There, robbers panicked and shot a bank customer when bank employees failed to activate a buzzer that would have allowed the robbers to exit an electronic door following a robbery. The court concluded that it would be unfair to impose liability for the criminal acts of the robbers because a buzzer-activated electronic door was in use. The defendant was not under a duty to deactivate the buzzer-controlled exit.

■ Plaintiff argues that when a patron is held hostage by an armed robber, a shopkeeper should have a duty to comply with the robber's demands in order to prevent possible injury to the patron. This obligation, she argues, is imposed by Civil Code section 1714, subdivision (a): "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person . . . ." Civil Code section 1714 states a civil law principle that is the foundation of our negligence law, whether developed under the statutory command or from the common law. (*Rowland* v. *Christian, supra,* 69 Cal.2d 108, 112.) It has never been construed as imposing a duty to comply with an unlawful demand that property be surrendered, however.

The *Vandermost* reasoning is urged by KFC and amicus curiae American International Group, Inc., who contend that there is never a duty to comply with the demands of a robber even when the robber is holding and threatening a hostage. They argue that there is no basis for an assumption that complying with a robber's demands would guarantee the safety of a hostage. Robbers are unpredictable and often injure victims and others even though there has been no resistance. Imposition of a duty to comply would be contrary to the public interest as it would encourage hostage taking by robbers who become aware that such conduct assures compliance with their demands.

We agree with KFC that no duty to comply with a robber's unlawful demands should be imposed on a shopkeeper on the theory that compliance may lessen the danger to other persons on the premises. Both article I, section 1 of the California Constitution[2] and Civil Code section 50[3] recognize the right of any person to defend property with reasonable force. We are not faced here with a situation in which KFC's employee engaged in active resistance to the robbery. Therefore, we need not decide if that right is qualified by the duty to avoid injury to third persons or if a duty exists to avoid physical resistance that might provoke a robber into carrying out a threat to harm third persons. It is enough to observe that recognizing a duty to comply with an unlawful demand to surrender property would be inconsistent with the public policy reflected in article I, section 1 of the California Constitution and Civil Code section 50. Because we are not faced with a situation in which active resistance to a robbery resulted in injury to a third person our holding is narrow. We hold only that there is no duty to comply with a robber's unlawful demand for the surrender of property. Simple refusal to obey does not breach any duty to third persons present on the premises.

As *Vandermost, supra,* 164 Cal.App.3d 771 and *Boyd* v. *Racine Currency Exchange, Inc., supra,* 306 N.E.2d 39, held, the public interest would not be served by recognition of a duty to comply with a robber's demands. Unlike the Court of Appeal, we are not satisfied that persons who commit armed

---

[2]California Constitution, article I, section 1: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and *protecting property,* and pursuing and obtaining safety, happiness, and privacy." (Italics added.)

[3]Civil Code section 50: "Any necessary force may be used to protect from wrongful injury the person or property of oneself, or of a wife, husband, child, parent, or other relative, or member of one's family, or of a ward, servant, master, or guest."

Penal Code section 197, subdivision 2 also recognizes a privilege to use reasonably necessary force in resisting crime in the defense of property against a person "who manifestly intends or endeavors, by violence . . . to commit a felony."

robbery would not become aware of and be encouraged by the existence of such a duty. Moreover, we have no basis upon which to conclude that compliance actually prevents injury to robbery victims. The public as a whole is much better served if would-be robbers are deterred by knowledge that their victims have no legal duty to comply with the robber's demands and are under no duty to surrender their property in order to protect third persons from possible injury.

## IV

### *Conclusion*

The judgment of the Court of Appeal is reversed.

George, C. J., Chin, J., and Brown, J., concurred.

**MOSK, J.**—I dissent.

In *Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114 [52 Cal.Rptr. 561, 416 P.2d 793] (hereafter *Taylor*), we held that, under the common law of California, "the proprietor of a business establishment" owes a "general duty" to his "business invitees" (*id.* at p. 121), including a specific duty to "exercise reasonable care for their safety" (*ibid.*) against, among other things, criminal conduct by third persons (*id.* at p. 124).

It follows that, under our common law, a business proprietor may or may not be under a duty to accede to the demands of a robber when his customers are present. Perhaps more correctly, he may or may not breach his duty to exercise reasonable care for their safety by refusing. *Each case depends on its own facts.* To be sure, in many if not most, as law enforcement authorities counsel, he should yield. But, in some perhaps, he need not.

Today, the majority announce a harsh and unjust rule that a business proprietor is *never* under a duty to accede to the demands of a robber when his customers are present, that he *never* breaches his duty to exercise reasonable care for their safety by refusing. They conclude, underneath their words, that a business proprietor is *immune as a matter of law* insofar as his customers find themselves in the presence of a robber. That is to say, a business proprietor is *never* required to subordinate any of his own property interests—no matter how insignificant the object and no matter how slightly it is jeopardized—to his customers' safety—no matter how many they are and no matter how gravely they are threatened. To expose such a conclusion is to prove its unsoundness.

In support of their harsh and unjust rule, the majority invoke "public policy," but to no avail. Whether the immunity they grant to business proprietors will indeed deter robbers, as they assert by ipse dixit without empirical support, depends on whether street criminals are in fact rational decisionmakers—a proposition that they themselves effectively reject when they imply that "[r]obbers are unpredictable" (maj. opn., *ante*, at p. 829).

In support of their harsh and unjust rule, the majority also invoke article I, section 1 of the California Constitution and section 50 of the Civil Code, also to no avail. Section 50 states, in substance, that it is a "personal right[]" (Civ. Code, § 43) to use "[a]ny necessary force . . . to protect" one's "property" "from wrongful injury" (*id.*, § 50). But section 43 of the same code makes plain that such a "personal right[]" is not absolute: rather, it is "subject to the qualifications and restrictions provided by law . . . ." (*Id.*, § 43.) One such "qualification" or "restriction" is found in *Taylor*'s common law rule that a business proprietor owes a duty to exercise reasonable care for the safety of his customers against criminal conduct by third persons. For its part, article I, section 1 declares: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." (Cal. Const., art. I, § 1.) "[I]nalienable rights" are not ipso facto absolute rights. That is true of all the enumerated rights—including those relating to property (e.g., *Max Factor & Co.* v. *Kunsman* (1936) 5 Cal.2d 446, 458 [55 P.2d 177], affd. *sub nom. Pep Boys* v. *Pyroil Sales Co.* (1936) 299 U.S. 198 [81 L.Ed. 122, 57 S.Ct. 147]).

For the reasons stated above, I would affirm the judgment of the Court of Appeal.

**KENNARD, J., Dissenting.**—In this case, a patron was taken hostage during a restaurant robbery. Holding a gun to the patron's back, the robber demanded that the cashier open the cash register. The cashier refused, falsely stating that she did not have a key to the register. The robber repeated his demand and threatened to kill the patron. The cashier then complied and gave the robber the money; the robber released the patron and fled. The patron, claiming that she suffered injury from this ordeal, has now sued the restaurant for negligence.

Negligence law holds one liable for failing to use reasonable care to avoid harm to others only in those cases where one has a duty to use reasonable care. To determine liability, it is necessary to distinguish between the

separate questions of whether a duty exists and whether a duty that exists has been breached by the failure to use the care that a reasonable person would have used under the circumstances. Whether a defendant has a duty to use reasonable care to avoid harm to the plaintiff is decided as a matter of law by the court. If the court finds that a duty exists, the next question is whether the defendant used reasonable care. It is generally the jury, as trier of fact, that decides whether the defendant used the care that a reasonable person would use under the circumstances to avoid harm to the plaintiff.

Here, the majority and I agree that the restaurant had a duty to take reasonable steps to protect its patrons from foreseeable assault by third parties on the premises. This court has long recognized such a duty. (*Taylor v. Centennial Bowl, Inc.* (1966) 65 Cal.2d 114 [52 Cal.Rptr. 561, 416 P.2d 793].) Given this duty, the question of whether the restaurant breached this duty and failed to use due care when its cashier initially refused to comply with the robber's demands is a question for the jury. Because the restaurant has not shown that reasonable minds could only decide this issue in its favor, the trial court and the Court of Appeal correctly concluded that the restaurant was not entitled to summary judgment on this issue.

The majority reaches a contrary result; it errs, however, by mistakenly framing the issue before us as an issue of duty to be decided by the court as a matter of law rather than as an issue of reasonable care for the jury. For the majority, the issue is whether a business proprietor always (or never) has a "duty" to comply with the demands of a robber who threatens a customer with harm; the majority concludes that a business proprietor need never protect its customers by doing so.

The issue before us, however, is properly a question of whether defendant's cashier, in initially refusing to comply with the robber's demand, breached the reasonable person standard of care, not whether defendant was under a "duty" to follow a prescribed course of conduct. By framing the issue as a question of duty, the majority usurps the jury's historic function in a negligence case to determine the reasonableness of defendant's conduct under the surrounding circumstances.

I

Plaintiff Kathy Brown was a customer at a restaurant, owned by Kentucky Fried Chicken of California, Inc. (KFC), when an armed robber entered, put a gun to Brown's back, and demanded money from the restaurant and her. Brown complied; the store cashier did not, instead falsely telling the robber that she would have to get a key for the cash register from the back of the

restaurant. The robber became agitated and angry, shoved his gun in Brown's back, and told the cashier he would shoot Brown unless the cashier "quit playing games" and opened the register immediately. Brown screamed that the cashier should open the register. The cashier then opened the register and gave the money to the robber, who fled.

Brown sued KFC, seeking damages for personal injury. Brown alleged that KFC's cashier acted negligently by initially refusing to comply with the robber's demands and that KFC had failed to provide proper security and to adequately train its employees. KFC moved for summary judgment, arguing that it had no duty to protect Brown against criminal acts by third parties in the absence of prior similar incidents or to comply with the requests of criminals, and that even if a duty was owed to Brown, KFC had not breached it.

The trial court denied KFC's motion for summary judgment. KFC petitioned the Court of Appeal for a writ of mandate to compel the trial court to grant summary judgment for it. The Court of Appeal denied the petition in a written opinion.

## II

A finding of negligence depends on two determinations. The first determination, a question of law for the court, is this: Does the defendant have a duty to protect the plaintiff from a particular type of harm? (See *Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207].) The second determination, necessary only if a duty is found to exist, is this: Did the defendant's conduct satisfy the standard of care that the duty imposes? (See *ibid.*; *Ramirez* v. *Plough, Inc.* (1993) 6 Cal.4th 539, 546 [25 Cal.Rptr.2d 97, 863 P.2d 167, 27 A.L.R.5th 899].) (Ordinarily, the standard is to act as a reasonable person would under similar circumstances. See *Ramirez* v. *Plough, Inc., supra,* 6 Cal.4th 539, 546.) This is generally a question for the jury as trier of fact. (*Ibid.*)[1]

With respect to the question of duty, this court in *Taylor* v. *Centennial Bowl, Inc., supra,* 65 Cal.2d 114, recognized a business proprietor's duty to use reasonable care to protect customers who visit its premises from assault by third parties. *Taylor* held that "the duty owed by the proprietor of a business establishment to business invitees" includes the duty to "exercise

---

[1]Liability also, of course, requires a third determination: Was the defendant's failure to conform to the standard of care the proximate or legal cause of the plaintiff's injury? (See *Ann M.* v. *Pacific Plaza Shopping Center, supra,* 6 Cal.4th 666, 673.) That question is not before us in this case.

reasonable care for their safety," and specifically "the duty to take affirmative action to control the wrongful acts of third persons which threaten invitees where the occupant has reasonable cause to anticipate such acts and the probability of injury resulting therefrom." (*Taylor* v. *Centennial Bowl, Inc., supra,* 65 Cal.2d 114, 121; accord, *Ann M.* v. *Pacific Plaza Shopping Center, supra,* 6 Cal.4th 666, 674; *Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 123 [211 Cal.Rptr. 356, 695 P.2d 653]; *Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 806-807 [205 Cal.Rptr. 842, 685 P.2d 1193].) The majority acknowledges the continuing validity of *Taylor*; as the majority also acknowledges, section 344 of the Restatement Second of Torts, which the *Taylor* court cited with approval, similarly recognizes that business proprietors have a duty to "exercise reasonable care . . . [¶] . . . to protect [their patrons] against" the "harmful acts of third persons."

"[T]he duty to take affirmative action to control the wrongful acts of third persons which threaten invitees" (*Taylor* v. *Centennial Bowl, Inc., supra,* 65 Cal.2d 114, 121) does not end once an attack on a patron is in progress. This duty obligated KFC not only to take reasonable care to protect against such wrongful acts by third persons but also, if such acts occurred nonetheless, to take reasonable care to avoid increasing the risk of injury to its patrons from those acts. (See *Trujillo* v. *G.A. Enterprises, Inc.* (1995) 36 Cal.App.4th 1105, 1109 [43 Cal.Rptr.2d 36]; *Marois* v. *Royal Investigation & Patrol, Inc.* (1984) 162 Cal.App.3d 193, 199, 201 [208 Cal.Rptr. 384]; Rest.2d Torts, § 344, com. f, p. 225 [proprietor's duty to use reasonable care to protect patrons from acts of third persons exists when proprietor "knows or has reason to know that the acts of the third person are occurring"].) Other courts have similarly required business proprietors to use reasonable care to avoid increasing the risk to patrons during a robbery. (*Helms* v. *Church's Fried Chicken, Inc.* (1986) 81 N.C.App. 427 [344 S.E.2d 349, 351] [applying "the general principle that a defendant owes a duty not to increase foreseeable risk of harm to another" to a business proprietor's conduct during a robbery]; *Kelly* v. *Kroger Company* (10th Cir. 1973) 484 F.2d 1362, 1364; *Helms* v. *Harris* (Tex.Civ.App. 1955) 281 S.W.2d 770, 772 ["when acts in self-defense or in defense of one's property are committed under circumstances where the actor should realize that such acts create an unreasonable risk of causing harm to innocent third parties . . . such third parties may subject the actor to liability"]; see Annot., Liability of Storekeeper for Death of or Injury to Customer in Course of Robbery (1976) 72 A.L.R.3d 1269, 1273 ["if a proprietor acts, or fails to act, against an armed robber when he should reasonably foresee that his action, or inaction, could proximately result in injury to the customer, then the proprietor would presumably be liable for such injuries"].)

Given the existence of KFC's duty to use reasonable care to prevent harm to Brown during the robbery, whether it and its employees met the standard and acted reasonably is a question for the jury, unless reasonable minds could not differ on the question. (*Ramirez* v. *Plough, Inc., supra,* 6 Cal.4th 539, 546.) The answer to that question depends on the circumstances of the particular case, and cannot be determined as a rule of law that, regardless of the surrounding circumstances, applies to all defendants presented with a similar risk of harm to another. "Because application of [the reasonable person standard] is inherently situational, the amount of care deemed reasonable in any particular case will vary, while at the same time the standard of conduct itself remains constant, i.e., due care commensurate with the risk posed by the conduct taking into consideration all relevant circumstances." (*Flowers* v. *Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 997 [35 Cal.Rptr.2d 685, 884 P.2d 142].)

Accordingly, the reasonable person standard of care may require less care during a robbery, or other criminal event, than it does under calmer and more composed circumstances. Robberies are stressful and unpredictable encounters, frequently fast paced, in which those being robbed are forced to decide and act, often instantaneously, upon necessarily incomplete information about the situation that confronts them. Under such circumstances, the scope of what is reasonable is necessarily wide, and often there may be a number of alternative courses of action that, given the circumstances, will be equally reasonable.

The standard California jury instructions on negligence include an instruction recognizing that a person confronting a sudden danger "is not expected nor required to use the same judgment and prudence that is required in the exercise of ordinary care in calmer and more deliberate moments." (BAJI No. 4.40 (8th ed. 1994).) The instruction explains: "[His] [Her] duty is to exercise the care that an ordinarily prudent person would exercise in the same situation. If at that moment [he] [she] does what appears to [him] [her] to be the best thing to do, and if [his] [her] choice and manner of action are the same as might have been followed by any ordinarily prudent person under the same conditions, [he] [she] does all the law requires of [him] [her]. This is true even though in the light of after-events, it should appear that a different course would have been better and safer." (*Ibid.*)

The Restatement Second of Torts similarly recognizes that actions may be reasonable in an emergency that might be unreasonable under calmer circumstances that would permit the actor to gather more information and analyze it deliberately and reflectively. (Rest.2d Torts, § 296 ["In determining whether conduct is negligent toward another, the fact that the actor is

confronted with a sudden emergency which requires rapid decision is a factor in determining the reasonable character of his choice of action."]; accord, *Helms* v. *Church's Fried Chicken, Inc., supra,* 344 S.E.2d 349, 352; Prosser & Keeton on Torts (5th ed. 1984) § 33, pp. 196-197; Annot., Liability of Storekeeper for Death of or Injury to Customer in Course of Robbery, *supra,* 72 A.L.R.3d 1269, 1274 ["the occurrence of an armed robbery puts all persons involved under a considerable state of stress, and in determining the standard of care owed by a proprietor toward his customers during an armed robbery of the premises, the so-called 'sudden emergency rule' should thus be considered, as it takes into account, in establishing the standard of care, the stress to which the proprietor, as well as other persons on the premises, are being subjected" (fn. omitted)].)

The "inherently situational" reasonable person standard of conduct thus gives business proprietors a wide latitude of discretion in responding to robberies, while nonetheless allowing for liability in those few cases where the proprietor acts unreasonably and causes harm to a customer. The standard of conduct does not require extraordinary heroics or superhuman reactions. In addition, a plaintiff must satisfy the requirement of causation by proving that the proprietor's conduct, not just that of the robber, was a legal cause of the injury.

In this case, KFC moved for summary judgment on two grounds: (1) It "did not owe plaintiff [either] a duty to protect her from criminal conduct of third persons where there was no knowledge of or occurrence of prior similar criminal acts on the premises" or a duty to comply with the robber's demands; and (2) even if a duty existed, KFC did not breach that duty. The duty of care that this court recognized in *Taylor* v. *Centennial Bowl, Inc., supra,* 65 Cal.2d 114, 121, disposes of the first ground. Once the robbery was in progress the existence of "wrongful acts of third persons" (*ibid.*) was a certainty and KFC had a duty not to unreasonably increase the risk of harm to Brown. As to the second ground, to prevail on summary judgment, KFC must establish that rational jurors could reach no other conclusion than that KFC and its employees used reasonable care to protect KFC's patron, Brown. (See *Ramirez* v. *Plough, Inc., supra,* 6 Cal.4th 539, 546; Code Civ. Proc., § 437c.)

KFC has not done so. The only evidence that KFC submitted in support of its summary judgment motion was the account of the robbery given by Brown at her deposition and a declaration by a KFC employee stating there had been no previous robberies at the restaurant. This evidence does not carry KFC's burden of demonstrating that no rational juror could conclude

that KFC's cashier acted unreasonably in initially refusing the robber's demand and attempting to deceive him by telling him falsely that she could not open the cash register. (See *Trujillo* v. *G.A. Enterprises, Inc., supra*, 36 Cal.App.4th 1105, 1108-1109 [whether security guard took reasonable steps to protect patron of fast-food restaurant during assault could not be resolved on summary judgment]; *Marois* v. *Royal Investigation & Patrol, Inc., supra*, 162 Cal.App.3d 193, 202 [same; "Where an individual is being physically assaulted, or where another individual is approached by a bat-wielding assailant, it requires no mastery of metaphysical philosophy or economic risk analysis to appreciate the strong possibility of serious injury. The only question in this case is whether the security guards responded reasonably to this clearly foreseeable risk."].)

### III

The majority takes a different approach. Instead of recognizing that the reasonableness of the cashier's conduct presents a jury question of whether the standard of care was breached, the majority reformulates it as a question of duty for the court: Does "the law impose[] a duty to comply with a robber's demands"? (Maj. opn., *ante*, at p. 824.)

In doing so, the majority confuses the legal question (for the court) of whether KFC had a duty to protect patron Brown from harm with the question (for the jury) of whether KFC has complied with the standard of conduct imposed by that duty by taking reasonable care not to increase the risk of harm to Brown. By confusing the separate questions of whether a duty exists and whether the standard of care has been breached, the majority makes the unspoken and erroneous assumption that the only alternatives are either to require business proprietors to comply with a robber's demands in every case or in no case.

The focus of the duty analysis should not be on the details of a defendant's conduct. The pertinent inquiry is whether a defendant must take steps to avoid causing a given type of harm to the victim. (*Coffee* v. *McDonnell-Douglas Corp.* (1972) 8 Cal.3d 551, 558-559 [105 Cal.Rptr. 358, 503 P.2d 1366].) *What* steps a defendant must take to avoid the harm is a question of whether the defendant has met the standard of care by acting reasonably under the circumstances; also, it is a question that arises only after a duty has been found to exist. (*Id.* at pp. 558-560.)

Once the majority concludes as it does that KFC and its employees owed patron Brown a duty to take reasonable steps to protect her while she was in the restaurant from the foreseeable criminal acts of others, the question

whether KFC's cashier should have complied with the robber's demands immediately rather than initially refusing to do so is a question of whether the cashier acted reasonably under the circumstances and thereby satisfied the standard of care. This, as I indicated earlier, is a question for the jury, not a question of law for the court: "Once the court has formulated the standard [of care], its application to the facts of the case is a task for the trier of fact if reasonable minds might differ as to whether the defendant's conduct has conformed to the standard." (*Ramirez* v. *Plough, Inc., supra,* 6 Cal.4th 539, 546; see also *Pool* v. *City of Oakland* (1986) 42 Cal.3d 1051, 1061 [232 Cal.Rptr. 528, 728 P.2d 1163] ["the trier of fact determines whether a defendant's conduct satisfies the applicable standard of care"]; *Coffee* v. *McDonnell-Douglas Corp., supra,* 8 Cal.3d 551, 558-560; Weiner, *The Civil Jury Trial and the Law-Fact Distinction* (1966) 54 Cal.L.Rev. 1867, 1876-1882.) The majority errs in transforming this question into an issue of duty to be answered by the court.[2]

---

[2]As the majority notes, appellate courts, following their experience in deciding many negligence claims arising from a particular activity whose circumstances do not vary greatly, on rare occasions have concluded that the reasonable course of conduct for that activity could be declared in a judicial decision as a detailed rule of reasonable conduct. (*Ramirez* v. *Plough, Inc., supra,* 6 Cal.4th 539, 547; Rest.2d Torts, § 285, com. e, p. 22.) In such a case, whether the defendant was negligent turns on whether the defendant followed the rule of conduct laid down by judicial decision.

The majority here, however, does not create a fixed rule of reasonable conduct for juries to apply. It does not claim that robberies are so stereotypical and judicial experience with them so vast that it is feasible to define reasonable conduct during a robbery by a fixed rule. It does not purport to conclude that there are no circumstances in which a reasonable business proprietor would ever comply with a robber's demands (nor is there any basis on which it could reach such a conclusion). Rather, it decides that the reasonableness of the proprietor's conduct is irrelevant because the proprietor has no duty to act to protect its innocent patrons during a robbery. Duty, not reasonableness, is the analysis the majority adopts in this case.

Moreover, as a leading torts treatise observes, most attempts to create such judicial rules of reasonable conduct have failed: "Almost invariably the rule has broken down in the face of the necessity of basing the standard [of reasonable conduct] upon the particular circumstances, the apparent risk, and the actor's opportunity to deal with it." (Prosser & Keeton on Torts, *supra,* § 35, p. 218.) Because the duty imposed by negligence law "requires only conduct proportionate to the circumstances and the risk[, it] seldom, if ever, can be made a matter of absolute rule." (*Id.,* at p. 219, fn. omitted.) For instance, the archetypal example of this practice was the attempt of various appellate courts to precisely define the proper conduct of a locomotive engineer and an automobile driver as each approached an unguarded grade crossing. (Rest.2d Torts, § 285, com. e, p. 22.) The United States Supreme Court, in a famous pair of decisions, first created a rule of conduct for that activity and then abandoned it, ultimately concluding that notwithstanding the relatively narrow range of factual variation in railroad crossing cases, the reasonable person standard was a better tool for determining negligence. (*B. & O. R. R.* v. *Goodman* (1927) 275 U.S. 66, 70 [72 L.Ed. 167, 168, 48 S.Ct. 24, 56 A.L.R. 645]; *Pokora* v. *Wabash Ry. Co.* (1934) 292 U.S. 98, 105-106 [78 L.Ed. 1149, 1154-1155, 54 S.Ct. 580, 91 A.L.R. 1049]; accord, *Toschi* v. *Christian* (1944) 24 Cal.2d 354, 360 [149 P.2d 848].)

It is always possible to recast any question of whether the standard of care has been breached as a question of "duty," as the majority does here.[3] Thus, instead of asking whether an automobile driver who failed to stop in time used the care of a reasonable driver under like circumstances, we could ask whether the driver had a "duty" to begin braking sooner; instead of asking whether a doctor treated a feverish patient with the care of a reasonable physician we could ask whether the doctor had a "duty" to administer penicillin. If a court does so, however, it abandons the flexibility inherent in the application of the reasonable person standard and instead dictates a rigid, inflexible rule of conduct that applies not only to the defendant in the case before it but also to all defendants in future cases who are confronted by a risk of the same type of harm to another, regardless of differences in the surrounding circumstances. For good reason, most courts have rejected this course.

When courts impose a duty on a defendant, they generally do so without imposing a rigid, specific, and inflexible course of conduct. "In most cases, courts have fixed no standard of care for tort liability more precise than that of a reasonably prudent person under like circumstances." (*Ramirez* v. *Plough, Inc.*, *supra*, 6 Cal.4th 539, 546.) As this court has recognized, the reasonable person standard on which negligence liability is founded necessarily requires an individualized examination of a particular course of conduct and an individualized determination of its reasonableness. "What constitutes 'ordinary care' under the facts of any particular case is usually a question for the jury, which must view the conduct as a whole in the light of all the circumstances. Thus, it is common practice for the jury to determine the standard of conduct to be applied within the compass of the broad rule that the prescribed conduct must conform to that of a 'reasonably prudent [person] under the circumstances.' " (*Laird* v. *T. W. Mather, Inc.* (1958) 51 Cal.2d 210, 215 [331 P.2d 617]; see also *Lucas* v. *Southern Pacific Co.* (1971) 19 Cal.App.3d 124, 137-140 [96 Cal.Rptr. 356]; Weiner, *The Civil Jury Trial and the Law-Fact Distinction*, *supra*, 54 Cal.L.Rev. 1867, 1883-1885.)

---

[3] A leading torts treatise makes this point: "It is quite possible, and not at all uncommon, to deal with most of the questions which arise in a negligence case in terms of 'duty.' . . . But the problems of 'duty' are sufficiently complex without subdividing it in this manner to cover an endless series of details of conduct. It is better to reserve 'duty' for the problem of the relation between individuals which imposes upon one a legal obligation for the benefit of the other, and to deal with particular conduct in terms of a legal standard of what is required to meet the obligation. In other words, 'duty' is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same—to conform to the legal standard of reasonable conduct in the light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty." (Prosser & Keeton on Torts, *supra*, § 53, p. 356; see also *Coffee* v. *McDonnell-Douglas Corp.*, *supra*, 8 Cal.3d 551, 559, fn. 8.)

There are at least three good reasons why negligence law has allocated the judgment of the reasonableness of a defendant's conduct to the jury as a matter for case-by-case determination, rather than having courts, under the rubric of "duty," establish as a matter of law fixed and unvarying rules of conduct for various categories of human activity. The first reason arises from the irreducible variety of circumstances which may surround an event that causes harm to someone. Because of this variety, an individualized rather than categorical determination of what constitutes reasonable care to avoid a particular type of harm usually will provide a more precise measure of what conduct is reasonable under the circumstances. (Prosser & Keeton on Torts, *supra*, § 37, p. 237 ["Since it is impossible to prescribe definite rules in advance for every combination of circumstances which may arise, the details of the standard must be filled in in each particular case."].)

This court in the past has repeatedly recognized that judging the reasonableness of a defendant's conduct on a case-by-case basis provides a more precise determination of the contours of liability: "Standards of care are typically relative; rules of law are basically absolute. Hence, in regard to negligence, any attempt to screen factual conduct into legal classifications through a sieve of absolute law will be impracticable whenever the related circumstances admit of materially conflicting inferences. In other words, the actor's conduct must always be gauged in relation to all the other material circumstances surrounding it . . . ." (*Toschi* v. *Christian, supra,* 24 Cal.2d 354, 360.)

"If the term 'negligence' signified an absolute quantity or thing to be measured in all cases in accordance with some precise standard, much of the difficulty which besets courts in the solution of this class of cases would be at once dissipated. But, unfortunately, it does not. Negligence is not absolute, but is a thing which is always relative to the particular circumstances of which it is sought to be predicated. For this reason it is very rare that a set of circumstances is presented which enables a court to say as matter of law that negligence has been shown. As a very general rule, it is a question of fact for the jury—an inference to be deduced from the circumstances . . . ." (*Fox* v. *Oakland Con. St. Ry.* (1897) 118 Cal. 55, 61-62 [50 P. 25]; see also *Seller* v. *Market-Street Ry. Co.* (1903) 139 Cal. 268, 271 [72 P. 1006] [Negligence "is a question of fact for the jury, an inference to be deduced from the circumstances of each particular case, and it is only where the deduction to be drawn is inevitably that of negligence that the court is authorized to withdraw the question from the jury."].)

The greater accuracy that results from determining the propriety of the defendant's conduct by application of the reasonable person standard of care

advances the economic function of tort law. The reasonable person standard of negligence liability, by asking whether a reasonable person would have taken additional precautions under the circumstances, examines how the risk of harm from the defendant's activity and the benefits of conducting the activity vary depending upon the precautions taken to avoid the harm. (See Landes & Posner, The Economic Structure of Tort Law (1987) pp. 58-65, 85-87; see also *Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 47 [123 Cal.Rptr. 468, 539 P.2d 36] ["Liability is imposed only if the risk of harm resulting from the act is deemed unreasonable—i.e., if the gravity and likelihood of the danger outweigh the utility of the conduct involved."]; Prosser & Keeton on Torts, *supra*, § 31, p. 173 & fn. 46.) In economic terms, it encourages the optimal level of care on the part of both victims and injurers, optimal being defined as the point at which the cost of any additional precautions will be greater than the benefit of avoiding additional injury. (See Landes & Posner, The Economic Structure of Tort Law, *supra*, pp. 58-65, 85-87; Prosser & Keeton on Torts, *supra*, § 31, p. 173 & fn. 46.) An individualized determination of reasonableness increases efficiency because it allows for the optimal level of care to be determined under the circumstances of each case; it asks not whether in general the cost of additional precautions would be greater than the cost of additional injuries but whether, under the specific circumstances of the case at hand, additional precautions would have been cost effective. (It asks this question, of course, not formally but intuitively by asking whether a reasonable person would have taken additional precautions to avoid the accident. See Landes & Posner, The Economic Structure of Tort Law, *supra*, pp. 23, 85-87, 96-107; *Weirum* v. *RKO General, Inc.*, *supra*, 15 Cal.3d 40, 47.) To fix the conduct required to avoid a given harm as an absolute standard that does not vary with the accompanying circumstances, as the majority does here, inevitably means that in numerous cases the law will require something other than optimal care. (See Prosser & Keeton on Torts, *supra*, § 31, p. 173 [Because of the cost-benefit balancing required by the reasonable person standard, "it is usually very difficult, and often simply not possible, to reduce negligence to any definite rules; it is 'relative to the need and the occasion,' and conduct which would be proper under some circumstances becomes negligence under others." (Fns. omitted.)].)

There is a second reason why it is preferable to leave the question of what conduct is required under the circumstances to the jury for an individualized determination, rather than attempting to mandate detailed rules of conduct categorically. Doing so allows successive juries to reassess what precautions are reasonable as social, economic, and technological conditions change over time: "[R]oom is left for a change of standard when a change in the physical

conditions of life, or a change in the public valuation of the respective interests concerned, require it." (Bohlen, *Mixed Questions of Law and Fact* (1924) 72 U. Pa. L.Rev. 111, 117; see also *id.* at pp. 119-120.) Accordingly, the reasonable person standard of care, because it does not dictate a fixed course of conduct to avoid the harm in question, encourages innovations that reduce the cost of precautions and substitutions of less costly preventative measures that are equally or more effective in avoiding the harm. By contrast, locking defendants forever into a straitjacket of prescribed conduct removes the incentive for them to lower the cost and increase the level of precautions they provide.

The third reason for allocating the determination of the reasonableness of defendant's care to the jury in a negligence case is that the jury, in addition to providing an individualized judgment of defendant's conduct, also has the potential to bring a wider array of practical experience and knowledge to that task than could a single individual such as a judge. The jury is a repository of collective wisdom and understanding concerning the conditions and circumstances of everyday life that it can bring to bear on the determination of what conduct is reasonable. As the conscience of the community, the jury plays an essential role in the application of the reasonable person standard of care. (See Prosser & Keeton on Torts, *supra*, § 32, p. 175 [the "reasonable person" is "a personification of a community ideal of reasonable behavior, determined by the jury's social judgment"]; *id.*, § 37, p. 237 ["the public insists that its conduct be judged in part by the [person] in the street rather than by lawyers, and the jury serves as a shock-absorber to cushion the impact of the law"].) Accordingly, "the questions of the reasonableness of the risk of harm and the application of the standard of due care to particular facts are mixed questions of law and fact (or questions of 'law application' [citation]) which we have traditionally regarded as better answered by juries," rather than judges. (*Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232, 237, fn. 3 [60 Cal.Rptr. 510, 430 P.2d 68].)

Indeed, this court long ago recognized the value that a jury adds to the determination of reasonable care in a negligence case: "Our ideas as to what would be proper care vary according to temperament, knowledge, and experience. A party should not be held to the peculiar notions of the judge as to what would be ordinary care. That only can be regarded as a standard or rule which would be recognized or enforced by all learned and conscientious judges, or could be formulated into a rule. In the nature of things no such common standard can be reached in cases of negligence, where reasonable [persons] can reach opposite conclusions upon the facts. In such cases it was said in *Mann* v. *Baltimore etc. R. R. Co.*, 128 Ind. 138: 'It is said to be the

highest effort of the law to obtain the judgment of twelve [persons] of the average of the community, comprising [individuals] of learning, [individuals] of little education, [individuals] whose learning consists only of what they have themselves seen and heard, the merchant, mechanic, the farmer, and laborer, as to whether negligence does or does not exist in the given case.' " (*Herbert* v. *Southern Pacific Co.* (1898) 121 Cal. 227, 229 [53 P. 651]; see also *Lucas* v. *Southern Pacific Co., supra*, 19 Cal.App.3d 124, 137 ["Appellate edicts fixing the conduct of reasonably careful [persons] . . . infringe on the jury's power to decide what amounts to reasonable care."].)

The United States Supreme Court has similarly noted the unique practical knowledge that a jury in a negligence case brings to the task of judging the reasonableness of conduct: "Twelve [persons] of the average of the community . . . sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve [persons] know more of the common affairs of life than does one [individual], that they can draw wiser and safer conclusions from admitted facts . . . than can a single judge. [¶] . . . [A]lthough the facts are undisputed it is for the jury and not for the judge to determine whether proper care was given, or whether they establish negligence." (*Railroad Company* v. *Stout* (1873) 84 U.S. (17 Wall.) 657, 664 [21 L.Ed. 745, 749].)[4]

The majority here, in the course of ignoring the boundary that our decisions have established between issues of duty to be determined by the court and issues of the reasonableness of the defendant's conduct to be determined by the jury, asserts that its holding will result in fewer robberies and is therefore preferable as a matter of policy. This assertion lacks merit. It rests on the premise that in the absence of any potential liability to patrons, business proprietors will not only refuse the demands of robbers more frequently but that their refusal to cooperate will in many cases discourage robbers by successfully denying the robbers whatever thing of value they seek. As the ultimate success of the robber in this case illustrates, however, it is unlikely that in most cases a proprietor's refusal to cooperate will deny the robber what he seeks. It also seems unlikely that the majority's decision will embolden business proprietors or their employees to refuse the demands

---

[4]The values underlying the preference for having juries in negligence cases decide what level of precautions is reasonable under the circumstances in some respects parallel the values underlying the right to a jury trial guaranteed in criminal cases by Sixth Amendment to the United States Constitution. Both sets of values reflect in part a belief that certain decisions are best left to the commonsense judgment of the jury. (See *People* v. *Marshall* (1996) 13 Cal.4th 799, 877 [55 Cal.Rptr.2d 347, 919 P.2d 1280] (conc. and dis. opn. of Kennard, J.); see also Amar, *The Bill of Rights as a Constitution* (1991) 100 Yale L.J. 1131, 1182-1199.)

of an armed robber at a greater rate than they would if they were under a duty to use reasonable care, for they too are in the robber's zone of danger.[5]

I would instead adhere to the traditional division between duty and standard of care established by our precedents. Under that division, the issue here is whether KFC and its employees breached the standard of care by unreasonably refusing to comply with the robber's initial demand for money, not whether as a matter of law they have a duty to comply with a robber's demand in every case. For the reasons I have stated earlier, KFC has not demonstrated that no rational juror could conclude that KFC's cashier acted unreasonably in refusing the robber's demand and attempting to fool the robber; accordingly, it has not demonstrated that it is entitled to summary judgment on this ground.

## CONCLUSION

The majority, by mischaracterizing the issue in this case as whether a defendant business proprietor has a "duty" to comply with the demands of a robber, seeks refuge in the simplicity of a categorical pronouncement. As the discussion above demonstrates, however, our prior decisions have correctly allocated the question of the reasonableness of a defendant's conduct to the jury for an individualized determination made by applying the reasonable person standard to the circumstances of the case, rather than to the court for a categorical determination applicable to all defendants under all circumstances. That allocation is appropriate here as well.

It would seem likely that in most cases a business proprietor's initial refusal to comply with a robber's demand followed by immediate compliance with the demand when the robber reiterated it would not be unreasonable, in light of the stress, surprise, and uncertainty that would attend the proprietor's decision as to how to respond to the robber. But neither I nor the majority can answer that question categorically with assurance, for none of us can anticipate all of the myriad variations in circumstance in which the issue may arise. Just as it cannot be said that as a matter of law it is always

---

[5]The majority also asserts that holding a business proprietor liable for refusing to comply with a robber's demand "would be inconsistent with the public policy [permitting the use of force in defense of property] reflected in article I, section 1 of the California Constitution and Civil Code section 50." (Maj. opn., *ante*, at p. 829.) As the majority acknowledges, KFC and its employees did not use any force to defend property in this case; thus, those provisions are not implicated here and KFC does not assert that its conduct is privileged under those sections. More fundamentally, as Justice Mosk observes in his dissent, *ante*, the notion that article I, section 1 of the California Constitution and Civil Code section 50 automatically excuse a person exercising those rights from the obligation to do so in a manner that does not unreasonably cause harm to others is wrong.

(or never) negligent for a doctor to fail to give penicillin to a patient with a fever, it cannot be said as a matter of law that it is never (or always) negligent for a business proprietor to increase the peril to a customer by failing to comply with a robber's demand. Having determined that business proprietors must act reasonably to protect their customers from harm caused by third parties, this court should leave for the jury the determination of whether the conduct of KFC and its employees in this particular instance conforms to that standard.

Therefore, for the reasons stated above, I would affirm the judgment of the Court of Appeal denying KFC's petition for a writ of mandate.

Werdegar, J., concurred.